**CPG PRODUCTS CORPORATION,
Plaintiff,**

v.

**MEGO CORPORATION et al.,
Defendants.**

**No. C–1–79–582.**

United States District Court,
S. D. Ohio, W. D.

July 7, 1980.

A. Ralph Navaro, Jr., Cincinnati, Ohio, for plaintiff.

James Liles, Cincinnati, Ohio, Bertram Frank, Vincent M. Fazzari, New York City, for defendants.

## MEMORANDUM DECISION ON MOTION FOR TEMPORARY RESTRAINING ORDER

SPIEGEL, District Judge:

This is a civil action for patent infringement under Title 35, U.S.C. and for unfair competition under the common law of the United States and the State of Ohio. Jurisdiction of these matters is based on Title 28 U.S.C. § 1400(b) and Title 28 U.S.C. § 1338(b), respectively. Plaintiff's motion for a temporary restraining order which came on for hearing on July 1 and 2, 1980, concerns only the claim of unfair competition.

### FINDINGS OF FACT

Plaintiff, CPG Products Corporation, (CPG) is a Delaware corporation having its principal place of business in Minneapolis, Minnesota. With respect to the subject matter of this litigation, CPG has acted primarily through its Kenner Products Division which is headquartered in Cincinnati.

Defendant, Mego Corporation, (Mego) is a New York corporation with its principal place of business in New York.

The patent infringement action concerns CPG's Patent No. 4,169,336, issued on October 2, 1979, on a stretchable toy figure consisting of an elastic skin filled with a viscous fluid and currently marketed as Stretch Armstrong and Stretch Monster. The toy figures are produced at CPG's plant located in this District. In conjunction with the patent infringement claim, CPG also alleges that Mego engaged in acts of unfair competition arising from its alleged misappropriation of confidential information concerning CPG's manufacturing process for its stretchable toy figures.

This matter had been before the Court on CPG's motion to compel a principal officer of Mego to answer questions propounded to him in his deposition, which questions concerned Mego's exportation of the technolo-

gy it uses in its manufacturing process for stretchable toy figures strikingly similar to CPG's. The Court granted this motion on July 1, and Mego's officer was immediately deposed.

The motion for the temporary restraining order to bar Mego from exporting such information came on for hearing thereafter on the testimony of Mego's officer, Mr. Martin B. Abrams, numerous affidavits of witnesses, exhibits, excerpts from discovery depositions, and extensive arguments of counsel.

The findings are, of course, preliminary in the sense that they are made on the evidence producible and produced at the hearing. Because of the nature of the relief requested by CPG, it was essential that the motion for a temporary restraining order be heard quickly. Thus, both sides were necessarily limited and it may well be that important evidence will take considerably more time to produce.

■ However, on the evidence presented, the Court finds that CPG's methods of production, the design of the production line for the stretchable toy figure, the combination of various pieces of equipment for use on the production line, the sources of such equipment, and related cost factors, were all considered confidential by CPG and represent a substantial investment in time, effort, and money. The Court further finds that these rise to the level of trade secrets as defined by Ohio law and are worthy of protection. *Kewanee Oil Company v. Bicron Corporation*, 416 U.S. 470, 94 S.Ct. 1879, 40 L.Ed.2d 315 (1974) at pp. 474, 475, 94 S.Ct. at pp. 1882, 1883.

Further, the evidence presented shows that a substantial portion of CPG's confidential information relating to the manufacture of its stretchable toy figures was misappropriated by former and currently employed personnel of CPG's Kenner Division. This information included methods and equipment used in producing the stretchable toy figures and related cost information, and this misappropriated confidential information was acquired by Mego for a consideration with knowledge that it had been improperly disclosed as stated, and was used by Mego in the establishment of its production line of its stretchable toy figures marketed in competition with CPG's stretchable toy figures.

Moreover, the evidence disclosed that Mego is currently in the process of negotiations with a Mexican firm concerning the production of and sales in Mexico of the stretchable toy figures under a license from Mego, and that Mego is willing to transfer the technical information used by it in its manufacturing process to its Mexican concern, which is likely to include confidential trade secrets of CPG. Finally, the testimony developed that the Mexican firm plans to begin test marketing the toy in late 1980 with full production beginning in 1981.

Counsel for both parties concede that there is no remedy in Mexico for misappropriation of trade secrets. Should Mego transfer said technical information to Mexico, such information would then be in the public domain for anyone's use. Thus, irreparable injury would be incurred by CPG if trade secrets developed by it and utilized by Mego are exported to Mexico.

On the other hand, the evidence shows that it is unlikely that Mego would suffer serious harm should the temporary restraining order be granted, barring it from exporting its technical information. Mego is still in negotiations with its Mexican affiliate and the Mexican venture is aimed for a date five or six months in the future.

Finally, the evidence does not indicate that the public interest will be disserved by the granting of a temporary restraining order. To the contrary, Ohio law actively discourages unauthorized use of trade secrets by those to whom the secrets have been confided by making such activity criminal. Ohio Revised Code §§ 1333.51, 1333.99. On the basis of these facts, it is the opinion of the Court that CPG is entitled to immediate relief.

## CONCLUSIONS OF LAW

The standard which the Court uses in making this determination, is that set out in

*Roth v. Bank of The Commonwealth*, 583 F.2d 527 (6th Cir. 1978), at pp. 537, 538. That is, it has assessed CPG's likelihood of success on the merits and considered the irreparability of any harm to CPG, the balance of injury as between the parties, and the impact of the ruling on the public interest.

 Clearly, the degree of injury CPG will suffer, absent a temporary restraining order, is great while any injury to Mego by the imposition of such a restraint will be minimal. Moreover, this is a complex case in which CPG has raised questions going to the merits which are serious and substantial and present fair grounds for litigation. *Hamilton Watch Co. v. Benrus Watch Co.*, 206 F.2d 738 (2d Cir. 1953), cited with approval in *Roth*, supra. The Court, therefore, declines to determine more from the limited evidence produced than that CPG has presented evidence that CPG has a good likelihood of success on the merits of its claim of unfair competition, which calls for more deliberate investigation. See *Emery Industries, Inc. v. Cottier*, 202 U.S.P.Q. 829 (S.D.Ohio, 1978) at p. 834.

In this regard, the Court notes that there is pending a motion to dismiss this case for lack of jurisdiction. Mego has requested oral argument on this motion which will be set for hearing shortly. However, the Court has considered the question of jurisdiction as one element of CPG's likelihood of success. In that context and for the purposes of this motion for a temporary restraining order only, the Court finds that there is sufficient evidence now in the record to indicate that if there was faulty service, which is the basis for Mego's assertion of lack of jurisdiction, it was waived; however, the Court is not finally ruling on that issue at this time.

Consequently, having weighed CPG's likelihood of success with all the other factors to be considered in determining whether a temporary restraining order should be granted, the Court finds that immediate relief is indicated.

Further, under all the circumstances of this case, it appears to the Court that CPG reasonably should be required, as a condition of the temporary restraining order, to give bond in the amount of Ten Thousand ($10,000) Dollars.

A temporary restraining order consistent with the foregoing has been entered this date.

So ordered.