**USM CORPORATION, Plaintiff,**

v.

**TREMCO INCORPORATED, Defendant.**

**No. C 86–4742.**

United States District Court,
N.D. Ohio, E.D.

Dec. 29, 1988.

David A. Schaefer, Benesch, Friedlander, Coplan & Aronoff, Cleveland, Ohio, William L. Niro, Niro, Scavone, Haller & Niro, Chicago, Ill., for plaintiff.

Pat E. Morgenstern–Clarren, Stephen P. Owendoff and Paul J. Corrado, Hahn Loeser & Parks, Cleveland, Ohio, for defendant.

## ORDER

BATTISTI, Chief Judge.

Plaintiff, USM, commenced this lawsuit to enjoin Defendant's allegedly wrongful exploitation of USM's trade secrets. Those secrets include, primarily, the development of a polyurethane sealant for use in insulated windows. USM is a New Jersey corporation and has its principal place of business in Farmington, Connecticut. Defendant Tremco is an Ohio corporation and has its principal place of business in Cleveland, Ohio. USM is one of twelve partners involved in a worldwide research and development partnership. Through this partnership the polyurethane sealant, called Bostik 3180, was developed.

Apparently, under the partnership agreement each partner contributes to and has the right to benefit from the developmental research. USM states that it has the exclusive right to use the manufacturing techniques and know-how for Bostik 3180 in the United States. The technical advances made by the laboratory are owned jointly by all of the partners, however.

The original misappropriation of trade secrets occurred in West Germany. One of the twelve partners, Bostik GmbH, a West German corporation, was manufacturing the 3180 sealant. In 1980, two of Bostik's employees resigned and formed Kamia Chemical GmbH, another West German corporation. The two employees, Mssrs. Kanmar and Milutin, then began selling a similar polyurethane glass sealant under the tradename Isoseal 2000. Bostik sued its two former employees and Kamia for misappropriation of trade secrets. Bostik's case is still pending on appeal in West Germany.

In 1986, Kamia concluded a licensing agreement with Tremco, the defendant in this case. Tremco then commenced production of a polyurethane glass sealant in the United States, using the technical information provided by Kamia. In October of 1986, Tremco acquired Kamia through a stock purchase. USM sued Tremco in November of the same year.

Among the numerous motions now pending in this case is Tremco's Motion to Dismiss. The basis of this Motion is two-fold: first, Tremco argues that USM's claims are barred by Ohio's four-year statute of limitations; second, Tremco contends that USM is not the real party in interest under Fed.R.Civ.P. 17(a). As a preliminary matter it should be noted that in the context of a Motion to Dismiss, "the court must presume the factual allegations of the complaint to be true and all reasonable infer-

ences are made in favor of the non-moving party." J. Moore & J. Lucas, *Moore's Federal Practice* ¶ 12.07[2.–5] (2d Ed.1985).

### I. The Statute of Limitations

The statute of limitations governing the misappropriation of trade secrets is set forth in § 2305.09 of the Ohio Revised Code. *Hambleton v. R.G. Barry Corp.*, 12 Ohio St.3d 179, 465 N.E.2d 1298 (1984). That section provides, in pertinent part:

> An action for any of the following causes shall be brought within four years after the cause thereof accrued:
>
> \*     \*     \*     \*     \*     \*
>
> (B) for the recovery of personal property, or for taking or detaining it,....

The determinative question regarding Tremco's statute of limitations defense is: when did the cause of action arise? Tremco asserts that the cause of action arose only once, when the trade secrets were first appropriated by Kanmar and Milutin, the Bostik employees. Since that was in 1980, the four-year statute of limitations would bar this action. USM argues, on the other hand, that the wrong took place when Tremco knowingly obtained the trade secrets from Kanmar and Milutin, sometime in 1986.

The resolution of the above conflict is grounded in the underlying nature of trade secrets. "There are two competing views on the theoretical basis for legal protection of trade secrets: the 'property' view and the 'confidential relationship' view." *Anaconda Co. v. Metric Tool & Die Co.*, 485 F.Supp. 410, 425 (E.D.Pa.1980). Under the "property" theory, the basis for recovery is the adverse use of one's intellectual property. In that sense, the protection of trade secrets covers more than the initial disclosure alone. Subsequent unauthorized use is also protected. Under this theory, each use of the trade secret gives rise to a new cause of action which is accorded its own statute of limitations. In other words, "wrongful use of a misappropriated trade secret is a continuing tort." *Id.* at 426. By applying the "property" theory to the instant case, Tremco's 1986 use of USM's trade secret would give rise to a distinct cause of action and would not be barred by the four-year statute of limitations.

The second theory, the "confidential relationship" theory, focuses on the breach of a duty to hold secrets in confidence. Recently, the Ohio Supreme Court adopted this perspective. In *Valco Cincinnati, Inc. v. N & D Machining Service, Inc.*, 24 Ohio St.3d 41, 492 N.E.2d 814 (1986), the court stated:

> Often cited as explaining the nature of a trade secret is the opinion of Justice Oliver Wendell Holmes in *E.I. Dupont de Nemours Powder Co. v. Masland* (1917), 244 U.S. 100 [37 S.Ct. 575, 61 L.Ed. 1016], wherein it was observed that trade secret laws are not those of property but the equitable principles of good faith applicable to confidential relationships. The employer who has discovered or developed trade secrets is protected against unauthorized disclosure or use, not because he has a property interest in the trade secrets but because the trade secrets were made known to the employee in a confidential relationship.

*Id.* at 45, 492 N.E.2d 814. The practical effect of this theory is that the cause of action arises only once, when the confidence is breached. A district court in the Sixth Circuit has also espoused this view: "[o]bviously, the misappropriation of trade secrets is not a continuing offense. The wrong occurs at the time of the improper acquisition [of the information]." *Shatterproof Glass Corp. v. Guardian Glass Co.*, 322 F.Supp. 854, 869 (E.D.Mich.1970).[1] Tremco thus argues that the cause of action arose when the Kamia employees breached their duty of confidence in 1980. Since the case was not filed until 1986, the Ohio statute of limitations would bar the action.

Such an analysis, under the "confidential relationship" theory might be persuasive if Kanmar and Milutin, the original misappropriators, were the defendants in this case. Here, however, a third party is alleged to have committed the wrong: Tremco. In

---

1. *Accord, Kearns v. Ford Motor Company*, 203 U.S.P.Q. 884 (E.D.Mich.1978).

such a case, the "confidential relationship" theory imposes a duty on a knowingly wrongful third party.[2] The Court, in *CPG Products Corp. v. Mego Corp.*, 502 F.Supp. 42 (S.D.Ohio 1980) held that a third party could be enjoined if it acquired trade secrets with the knowledge that the information had been improperly appropriated. In that case, a number of the plaintiff's employees allegedly misappropriated confidential information. Defendant Mego, a third party, then acquired the supposed trade secrets. The court issued a temporary restraining order on the basis that "confidential information was acquired by Mego in the establishment of its production line ... in competition with CPG's stretchable toy figures." *Id.* at 44.[3]

■ At least one commentator would agree. Along with many state and federal cases, *CPG Products* was cited by Roger M. Milgrim for the proposition that,

> [i]f the [third party] has knowingly received the first user's trade secret through a breach of duty owed to the first user, the [third party] can be enjoined and the first user is entitled to appropriate additional relief, such as damages for the wrongful use.

1 *Milgrim on Trade Secrets*, § 5.04[3].[4] According to the above authorities, it is most probable that an Ohio court would hold a third party liable if it knowingly acquired misappropriated trade secrets. Such a holding would be consistent with the "confidential relationship" theory because the third party, by knowingly receiving trade secrets, would play an active role

in penetrating the shield of confidentiality which protects the trade secrets.

In light of the foregoing, the Ohio statute of limitations does not bar USM's claims. The wrong occurred when Tremco knowingly acquired USM's alleged trade secrets, sometime in early 1986. Tremco's Motion is therefore denied on the statute of limitations argument.

## II. Real Party in Interest

As its second ground for dismissal, Tremco asserts that USM is not the real party in interest. In Tremco's view, Bostik GmbH, the plaintiff in the West German suit, should be substituted under Rule 17(a). Tremco further suggests that "possibly even the partnership" is the real party in interest.

■ The purpose of Rule 17(a) is to ensure that "the party who brings an action possesses, under the substantive law, the right sought to be enforced." *Hanna Mining Co. v. Minnesota Power and Light Co.*, 573 F.Supp. 1395, 1397 (D.Minn.1983). In this case, USM claims that the Bostik 3180 technology is "owned jointly by all of the partners." As a result, USM clearly has a substantive right to protect its trade secrets from misappropriation. Tremco's Motion is thus denied on its second ground as well.

The question which remains is whether the other partners, or any other person, is also a real party in interest. This becomes an issue of joinder under Fed.R.Civ.P. 19 or 20. The discussion of additional parties, in

---

**2.** If Tremco's theory were adopted in a three party situation, the protection of trade secrets could be subject to serious abuse in jurisdictions which adopt the "confidential relationship" theory. Wrongful third parties would be immune from suit. Thus, through no fault of their own, plaintiffs could forever lose their trade secrets with recourse only against the original misappropriator. It is simple to formulate a scenario where conspirators could cause great harm yet remain subject to minimal liability.

**3.** *Cf.* a leading case imposing third party liability, *Whittaker Corp. v. Execuair Corp.*, 736 F.2d 1341 (9th Cir.1984) (cause of action against third party for wrongfully inducing a supplier to disclose confidential information).

**4.** *See Also,* The Uniform Trade Secrets Act which imposes liability on a third party. Section 1(2)(ii)(B)(I) states: " 'Misappropriation' means: ... disclosure or *use* of a trade secret of another without express or implied consent by a person who ... at the time of disclosure or use, *knew or had reason to know* that his knowledge of the trade secret was (I) derived from or through a person who had utilized improper means to acquire it...." (emphasis added).

The Act is consistent with the "confidential relationship" theory. The Commissioners' Comment to § 6, the statute of limitations section, states: "[t]his Act rejects a continuing wrong approach to the statute of limitations...." thereby rejecting the "property" theory.

this instance, is best left for a pretrial conference. Therefore, such a conference is hereby ordered for January 17, 1989 at 10:30 a.m.

IT IS SO ORDERED.