**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

CIENA CORPORATION,
Plaintiff-Appellee,

v.                                                              No. 99-2485

CYNTHIA JARRARD,
Defendant-Appellant.

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Frederic N. Smalkin, District Judge.
(CA-99-3269)

Argued: January 25, 2000

Decided: February 11, 2000

Before NIEMEYER, Circuit Judge, HAMILTON,
Senior Circuit Judge, and J. Frederick MOTZ,
Chief United States District Judge for the
District of Maryland, sitting by designation.

_____

Affirmed and remanded by published opinion. Judge Niemeyer wrote
the opinion, in which Senior Judge Hamilton and Chief Judge Motz
joined.

_____

**COUNSEL**

**ARGUED:** Edward W. Warren, KIRKLAND & ELLIS, Washington,
D.C., for Appellant. Stanley J. Brown, HOGAN & HARTSON,
L.L.P., McLean, Virginia, for Appellee. **ON BRIEF:** Christian B.

Hansen, JACKSON, LEWIS, SCHNITZLER & KRUPMAN, Washington, D.C.; Conrad S. Kee, JACKSON, LEWIS, SCHNITZLER & KRUPMAN, Stamford, Connecticut, for Appellant. Michael J. Lorenger, HOGAN & HARTSON, L.L.P., McLean, Virginia; Catherine E. Stetson, HOGAN & HARTSON, L.L.P., Washington, D.C.; Ruffin B. Cordell, Brian R. Nester, FISH & RICHARDSON, P.C., Washington, D.C., for Appellee.

_____

**OPINION**

NIEMEYER, Circuit Judge:

On two days' notice to the defendant of a hearing on an application for a temporary restraining order, the district court entered a preliminary injunction against the defendant, enforcing a noncompetition agreement against her. On appeal, the defendant challenges (1) the district court's jurisdiction and venue, (2) the adequacy of notice for entry of a preliminary injunction, and (3) the appropriateness of the injunction, both on procedural grounds and on the merits. While we affirm the injunction, we remand to give the defendant an opportunity to conduct expedited discovery and to file a motion to dissolve the injunction within 30 days.

I

CIENA Corporation, a Delaware corporation with its principal place of business in Linthicum, Maryland, is a high-tech business engaged in designing, manufacturing, and marketing hardware and software designed to increase the capacity of fiber-optic networks. CIENA's technology increases the capacity of a single fiber-optic cable by adding multiple signals on different wavelengths. Within the period of a few years, it has increased the capacity of cables from 4 wavelengths for a single fiber to 79, with the promise of up to 200 in particular applications. The company markets its products and services nationwide.

In September 1997, CIENA hired Cynthia Jarrard as the Western Regional Director of Sales, with a base of operations in Kansas City,

2

Missouri. Jarrard supervised CIENA's sales force in the western part of the United States, focusing on St. Louis, Denver, and Kansas City. She also served as account manager for CIENA's largest client, Sprint Communications. Jarrard was paid $300,000 per year plus substantial bonuses. CIENA states that for the last year Jarrard worked, her compensation was in the range of $500,000.

On taking her position with CIENA and as a condition of her employment, Jarrard executed an agreement to protect CIENA's proprietary information. This agreement provides in part:

> <u>Non-Solicitation</u>. During the term of my employment by the Company, and for a period of twelve months thereafter, I shall not, directly or indirectly, without the prior written consent of the Company . . . solicit or accept employment or be retained by any party who, at any time during the term of my employment, was a competitor or a client of the Company; or . . . solicit or accept the business of any party who, at any time during the term of my employment, was a client of the Company.

The agreement was, by its terms, effective September 22, 1997, although Jarrard did not sign it until October 2, 1997.

A little over two years after being hired as a sales director with CIENA, Jarrard resigned to accept a high-level sales position with a start-up corporation, Sycamore Networks, Inc., based in Chelmsford, Massachusetts. Jarrard's purported compensation, including stock options, was stated by CIENA on belief to be worth in excess of $5 million, an assertion with which Jarrard has not taken issue except to note that stock options in a start-up company are often difficult to value. Sycamore Networks' stated mission is to improve the optical network infrastructure available to the telecommunications industry, and in its SEC filings, it has disclosed that it competes directly with CIENA.

Upon learning of Jarrard's new employment with Sycamore Networks, CIENA promptly filed this action, alleging in two counts (1) that Jarrard breached her agreement with CIENA to keep confidential CIENA's trade secrets and not to compete with CIENA for 12 months

3

after leaving CIENA's employ, and (2) that Jarrard misappropriated and will continue to misappropriate CIENA's trade secrets in performing her new job with Sycamore Networks. CIENA notified Jarrard of this action on the date that the complaint was filed -- Friday, October 29, 1999 -- and on Saturday, October 30, provided Jarrard with copies of the suit papers, a motion for a temporary restraining order (TRO), and notice that the TRO motion would be heard in court on Monday, November 1, 1999.

At the commencement of the hearing on November 1, the district court informed the parties, "We are going to handle this as a TRO with notice, which is the equivalent to a preliminary injunction and it will be handled as a preliminary injunction." Neither party presented evidence at the hearing. Rather, the court resolved all the issues based upon the arguments of counsel, the verified complaint, and CIENA's motion papers.

During the course of the hearing, Jarrard (1) challenged the district court's jurisdiction over her, now a California resident, and its venue, (2) complained of a lack of notice, (3) argued that Delaware law, as referenced in the noncompetition agreement, did not apply, and (4) argued that the noncompetition agreement was unreasonable and therefore unenforceable. Rejecting Jarrard's arguments and balancing the relevant equities, the district court entered a preliminary injunction, enjoining Jarrard from "using, disclosing, or otherwise misappropriating any of CIENA's trade secrets or confidential information," and "[u]ntil further order of court" enjoining her from working for Sycamore Networks, soliciting any of CIENA's existing customers, soliciting or accepting business "from any customer or prospective customer of CIENA who Jarrard solicited during the time that she was employed by CIENA," or having any business contact with any "CIENA customers or potential customers whom she solicited" while working at the company. The court also required Jarrard to return to CIENA all trade secrets she still possessed. Finally, the court instructed CIENA to post a bond of $2.5 million to secure the injunction. During the course of the hearing, the district court explicitly invited Jarrard to file a motion for reconsideration "if [the injunction] needs to be reconsidered."

Jarrard appealed two days later. Her motions to stay, filed both with the district court and with this court, were denied, but we entered

4

an order expediting this appeal. We now address in turn each of Jarrard's arguments.

II

At the outset, Jarrard contends that the district court did not have personal jurisdiction over her and that the District of Maryland is not an appropriate venue for this case. She does not dispute the assertions made by CIENA relating to her contacts with Maryland or the relationship to Maryland of the issues in litigation.

Federal Rule of Civil Procedure 4(k)(1)(A) provides that "[s]ervice of a summons or filing a waiver of service is effective to establish jurisdiction over the person of a defendant . . . who could be subjected to the jurisdiction of a court of general jurisdiction in the state in which the district court is located." We have previously explained that "[b]ecause Rule 4(k)(1)(A) delimits the scope of effective federal service in terms of the limits on state court jurisdiction," our inquiry into a federal court's jurisdiction pursuant to the Rule looks to the law of the state in which the federal court sits and the limits on the jurisdiction of that state's courts imposed by the Fourteenth Amendment. ESAB Group, Inc. v. Centricut, Inc., 126 F.3d 617, 622-23 (4th Cir. 1997), cert. denied, 523 U.S. 1048 (1998).

The relevant provisions of Maryland's long-arm statute confer personal jurisdiction over a party who

> (1) Transacts any business or performs any character of work or service in the State; . . . [or]

> (4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State.

Md. Code Ann. Cts. & Jud. Proc. § 6-103(b)(1) & (4). The Maryland Court of Appeals has noted that the statute "represents an effort by the

5

Legislature to expand the boundaries of permissible in personam jurisdiction to the limits permitted by the Federal Constitution." Geelhoed v. Jensen, 352 A.2d 818, 821 (Md. 1976). As a consequence, "the statutory inquiry necessarily merges with the constitutional inquiry, and the two inquiries essentially become one." Stover v. O'Connell Assoc., Inc., 84 F.3d 132, 135-36 (4th Cir. 1996). As we explained in ESAB Group, "because Rule 4(k)(1)(A) delimits the scope of effective federal service in terms of the limits on state court jurisdiction, our inquiry into a federal court's jurisdiction pursuant to Rule 4(k)(1)(A) incorporates the Fourteenth Amendment due process standard, even though that Amendment applies of its own force only to states." 126 F.3d at 622-23. We therefore turn to the constitutional question of whether Jarrard has established "minimum contacts with [Maryland] such that the maintenance of the suit does not offend `traditional notions of fair play and substantial justice.'" International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940) (internal citation omitted)).

Jarrard was a high-level sales executive who was apparently on the move, both before and after her employment with CIENA. She was offered her employment with CIENA while she was traveling in North Carolina for Cisco Systems, Inc., and she advised CIENA that she would take the position while she was in Georgia. A few days later, CIENA faxed a noncompetition agreement form to Jarrard in San Diego, California, which contained provisions for the protection of CIENA's proprietary information, and Jarrard returned the signed agreement to Linthicum, Maryland, where CIENA signed it at its headquarters. During her employment with CIENA, Jarrard lived in Kansas City, Missouri, as the company's Western Regional Sales Director. During her two-year tenure in this position, Jarrard came to CIENA'S headquarters in Maryland for training and for regular meetings with high-level executives, which CIENA asserts were held at least once a month. It was in Maryland that Jarrard not only shared marketing plans and related sales information, but also learned about product developments, plans, and other product and customer information. CIENA maintains that Jarrard also solicited business on its behalf while in Maryland. Finally, CIENA contends that if Jarrard is permitted to compete in violation of her agreement with CIENA and is allowed to disclose CIENA's trade secrets, CIENA's injury will be felt in Maryland.

6

This case arises out of Jarrard's alleged breach of her noncompetition agreement, entered into with her Maryland-based employer; her knowledge of company trade secrets that she allegedly acquired during her numerous visits to the company's headquarters in Maryland; and her abrupt departure from the company to work for a competitor, an action implicating the training and experience she acquired in Maryland when she regularly traveled to the company's headquarters over a period of two years. Under all of these circumstances, we conclude that Jarrard's repeated trips to Maryland and the injury that she threatens in Maryland provided sufficient contacts with Maryland to enable a federal court in Maryland constitutionally to assert personal jurisdiction over her.

Jarrard's contacts with Maryland arose out of her activities as a mobile sales executive, serving a Maryland-based company at its headquarters. The alleged breach of contract with CIENA and the alleged torts committed against it purportedly arose in part out of Jarrard's many trips to headquarters in Maryland. These travels to Maryland were not incidental or infrequent. They were regular and numerous, and, together with the injury caused in Maryland, they support the conclusion that maintaining a suit in Maryland against Jarrard on the basis of these activities does not offend traditional notions of fair play and substantial justice.

These same contacts with Maryland that support the district court's exercise of personal jurisdiction over Jarrard also provide a basis for venue there. Under 28 U.S.C. § 1391(a)(2), a civil action founded on diversity of citizenship may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred."

Many of the events and facts central to this case concerned Jarrard's training, her access to and knowledge of trade secrets, and her job responsibilities, all of which are anchored in Maryland. Moreover, the alleged injuries that Jarrard has caused or threatens to cause were or will be sustained in Maryland. We readily conclude that a "substantial part of the events or omissions giving rise" to CIENA's claims occurred in the District of Maryland, providing venue there under § 1391(a)(2).

7

III

Jarrard's principal argument on appeal -- to which she devoted most of her oral argument -- is that she received insufficient notice that a preliminary injunction would be considered, in violation of her due process rights.

Although Jarrard received two days' notice of the TRO hearing, she did not learn until the hearing that a preliminary injunction would be considered. At the outset of the hearing on Monday, November 1, 1999, the district court stated, "We are going to handle this as a TRO with notice, which is the equivalent to a preliminary injunction and it will be handled as a preliminary injunction." Jarrard's counsel objected, stating that he had only been given notice of a motion for a TRO and not a preliminary injunction. He also stated, "we will need to conduct expedited discovery." The court expressed doubt about the need for discovery, but told Jarrard, "If [any injunction] needs to be reconsidered, make a motion for reconsideration." Jarrard's counsel added later, "If the Court should enter an injunction, again we would ask . . . for a continuance to be more adequately defended in this case." Even though the court felt during the hearing that it had before it the information necessary to rule on the application for an injunction, it again invited Jarrard to submit a motion for reconsideration: "I know . . . you are going to be in here with one, if not more, motions to reconsider very promptly."

Considering the motion for "a TRO with notice[to be] equivalent to a preliminary injunction," the district court entered a preliminary injunction, to take effect upon personal service on Jarrard, enforcing the terms of Jarrard's employment contract "until further order of court." Instead of filing a motion to dissolve the injunction or to reconsider it in light of additional facts, Jarrard filed this appeal on November 3, two days after the hearing before the district court.

Federal Rule of Civil Procedure 65, which governs the issuance of injunctions, states, "No preliminary injunction shall be issued without notice to the adverse party." Fed. R. Civ. P. 65(a)(1). Although the Rule does not specify how much notice must be given to an adverse party before a court can enter a preliminary injunction, the Supreme Court has held that same-day notice is not enough. See Granny Goose

8

Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70, 415 U.S. 423, 433 n.7 (1974). In Granny Goose, the Court compared the Rule 65(b) informal, same-day notice that suffices for issuance of a TRO with the "more thorough notice requirements which must be satisfied to obtain a preliminary injunction." Id. at 434 n.7. The Court emphasized that the notice required by Rule 65(a) for preliminary injunctions "implies a hearing in which the defendant is given a fair opportunity to oppose the application and to prepare for such opposition." Id.; see also Hoechst Diafoil Co. v. Nan Ya Plastics Corp., 174 F.3d 411, 422 (4th Cir. 1999).

The interplay between Rule 65(a) (governing preliminary injunctions) and Rule 65(b) (governing TROs) is fluid, requiring greater procedural formality and notice for preliminary injunctions that remain operative for an unlimited time period. Thus, Rule 65(b), which authorizes a ten-day TRO without notice to the defendant, nevertheless includes a requirement that whatever notice is practical be given. And while a TRO of limited duration may be issued upon the filing of an application without notice to the defendant, the party served with a TRO may seek dissolution of it upon two days' notice, or less if so ordered by the court. See Fed. R. Civ. P. 65(b). Because a preliminary injunction is unlimited in duration, its entry always requires notice to the opposing party sufficient to give that party an opportunity to prepare an opposition to entry of an injunction. See Granny Goose Foods, 415 U.S. at 433 n.7; Fed. R. Civ. P. 65(a). But broad discretion is given to the district court to manage the timing and process for entry of all interlocutory injunctions-- both TROs and preliminary injunctions -- so long as the opposing party is given a reasonable opportunity, commensurate with the scarcity of time under the circumstances, to prepare a defense and advance reasons why the injunction should not issue.

While Federal Rule of Civil Procedure 6(d) indicates that any motion (except one that may be heard ex parte ) shall be served "not later than 5 days before the time specified for the hearing," that rule is one of general applicability, which is subject to any different period "fixed . . . by order of the court." Fed. R. Civ. P. 6(d); see also Granny Goose Foods, 415 U.S. at 433 n.7. In the specific and time-sensitive context of interlocutory injunctions, in virtually every case the court establishes the timing of hearings based on the immediacy

9

of the factual circumstances and the relevant equities of the parties. Moreover, whether an interlocutory injunction entered is labeled a TRO or a preliminary injunction is not of particular moment, so long as the party opposing the injunction is given notice and an opportunity to oppose that is commensurate with the duration of the injunction. Thus, an interlocutory injunction entered without notice may extend only ten days with a possible ten-day extension, see Fed. R. Civ. P. 65(b), whereas an interlocutory injunction with an unlimited term may be entered only after giving notice sufficient to enable the opposing party to prepare an opposition, see Fed. R. Civ. P. 65(a).

In the case before us, Jarrard received two days' written notice of the hearing on CIENA's application for a TRO. Indicating a need for immediate action and recognizing Jarrard's opportunity to present a defense, the district court announced in effect that it would be considering entry of an injunction with an unlimited term, but invited Jarrard to file a motion to dissolve any injunction "promptly," if Jarrard wished to do so. The court was faced with allegations that Jarrard had just commenced work with a competitor of CIENA and that once she disclosed trade secrets, the damage would become irreparable. Jarrard appeared before the court acknowledging that she had signed an agreement with CIENA which (1) prohibited her employment with a competitor for a period of 12 months and (2) prohibited her from disclosing CIENA's trade secrets. She also acknowledged that she had accepted employment with a direct competitor of CIENA, even though she sought to assure the court that she would not disclose any of CIENA's trade secrets. The court was thus presented with a facial breach by Jarrard of her noncompetition agreement.

While Jarrard presented formal defenses of jurisdiction and venue and raised substantial choice-of-law issues, her core defense was that the restrictive covenant, prohibiting her from working with a competitor of her employer, was unreasonable and therefore should not be enforced. Without resolving here the issue of reasonableness, we conclude that the district court had sufficient evidence to justify entry of an injunction, which had the effect of shifting to Jarrard the burden of presenting evidence that her agreement should not be enforced. In this regard, the court expressly invited Jarrard to file motions for reconsideration. Jarrard chose not to pursue the matter before the dis-

10

trict court, but to appeal.[1] While she thus chose a course clearly within the range of her available options, she inexplicably neglected to pursue a course that would have cured the alleged prejudice of which she now complains -- her inability to conduct some discovery and develop her case. She did not pursue immediate discovery, nor did she even file a motion to dissolve the injunction based on facts available to her.

We are not unsympathetic to the difficult time constraints that confronted Jarrard. But we cannot conclude that she was denied the opportunity adequately to prepare an opposition to the application for an injunction. Nevertheless, we are remanding this case to the district court with instructions to allow Jarrard such expedited discovery on the injunction application as she may justify to the court, for a period extending no longer than 30 days, and to permit Jarrard within that period to file a motion to dissolve the injunction. In the meantime, however, the injunction entered by the district court may be continued, subject to further order of court. See Hoechst Diafoil, 174 F.3d at 424.

IV

Jarrard contends also that the procedural requirements for an interlocutory injunction were not met due to (1) "the district court's complete failure to make any factual findings" and (2) the injunction's failure to be "specific" and to "describe the acts sought to be restrained in reasonable detail." See Fed. R. Civ. P. 52(a) & 65(d). We find no merit in either of these contentions.

Before entering the injunction, the district court made factual findings and conclusions of law that cover three to four pages of the joint appendix. See J.A. 73-76, 82-84. The court found that Jarrard had served as a key employee, earning $300,000, in a high-tech industry where "knowledge is indeed power and the key to everything." It found that the parties had entered into a noncompetition agreement which was to be construed under Delaware law. As a preliminary

_____

[1] In connection with her appeal, Jarrard did file a motion in district court to stay the injunction pending appeal, a motion that the district court denied.

11

matter -- a "prima facie" showing -- the district court concluded that the covenant not to compete was "geographically and durationally reasonable" because of the nature of the industry. The court summarized its preliminary findings, concluding that CIENA had a "very strong" case for the enforcement of the noncompetition agreement. Based on its factual findings as well as the nature of the industry and the circumstances of each party, the court also conducted the balancing-of-equities test required under our decisions in Blackwelder Furniture Co. v. Seilig Mfg. Co., 550 F.2d 189 (4th Cir. 1977), and Direx Israel, Ltd. v. Breakthrough Med. Corp., 952 F.2d 802 (4th Cir. 1991), evaluating separately the equities favoring each party. The court concluded that with CIENA's "very strong" case on the merits, even if the equities "only slightly favored the plaintiff," an injunction would be appropriate. The court pointed out, however, that it was prepared to revisit the matter on a motion for reconsideration, which it anticipated would be filed "very promptly."

Federal Rule of Civil Procedure 52(a) provides:

> In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon, and judgment shall be entered pursuant to Rule 58; and in granting or refusing interlocutory injunctions the court shall similarly set forth the findings of fact and conclusions of law which constitute the grounds of its action.

(Emphasis added). We have held that the district court's failure to make findings of fact in accordance with Rule 52(a) is error and requires reversal of an order granting an injunction. See First Citizen's Bank & Trust Co. v. Camp, 432 F.2d 481, 483-84 (4th Cir. 1970); see also Mayo v. Lakeland Highlands Canning Co., 309 U.S. 310, 316 (1940) ("It is of the highest importance to a proper review of the action of a court in granting or refusing a preliminary injunction that there should be fair compliance with Rule 52(a) of the Rules of Civil Procedure").

Because the district court did set forth factual findings and conclusions of law in its ruling from the bench, Jarrard must be suggesting a requirement that these findings and conclusions be included in the

12

injunction order itself. But Rule 52(a) imposes no such requirement. We believe that the district court's findings of fact and conclusions of law, made on the record, satisfied the Rule 52(a) requirement that such factual findings and legal conclusions be "set forth." And while the facts found by the district court on the record are alone sufficient to support the court's entry of an injunction, the court went further, summarizing these findings in the injunction order itself. There, the court stated its findings "that CIENA will suffer immediate and irreparable injury unless Defendant is temporarily enjoined as set forth in this Order, and that the balance of hardships favors plaintiff, who is likely to prevail on the merits."

We also reject Jarrard's argument that the injunction was not sufficiently specific in its directive to meet the requirements of Rule 65(d). Federal Rule of Civil Procedure 65(d) provides in relevant part:

> Every order granting an injunction . . . shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained . . . .

(Emphasis added). While these requirements of Rule 65(d) "are mandatory and must be observed in every instance," Alberti v. Cruise, 383 F.2d 268, 271-72 (4th Cir. 1967), we believe that the district court fully complied with the Rule. To demonstrate this, we need only recite the injunctive language itself, which provides as follows:

> (1) Jarrard is enjoined from using, disclosing, or otherwise misappropriating any of CIENA's trade secrets or confidential information;

> (2) Until further order of Court, Jarrard is enjoined from soliciting any of CIENA's existing customers;

> (3) Until further order of court, Jarrard is enjoined from soliciting or accepting business from any customer or prospective customer of CIENA who Jarrard solicited during the time that she was employed by CIENA;

13

(4) Until further order of Court, Jarrard is enjoined from having any business contact with agents or representative of Sprint Communications or any other CIENA customers or potential customers whom she solicited while at CIENA;

(5) Jarrard is required to return to CIENA all trade secret material she still has in her possession; and

(6) Until further order of Court, Jarrard is enjoined from continuing in the employ of and/or accepting employment by Sycamore.

(7) Plaintiff shall post a bond in the amount of $2,500,000.00, within 72 hours of the date hereof.

We find no merit in Jarrard's contention that "concepts" such as "trade secrets" and "CIENA's existing customers" are so ambiguous or unreasonably broad as to violate the Rule.

V

Finally, Jarrard contends that the district court abused its discretion in evaluating the merits of the injunction, arguing particularly that the district court erroneously applied the established standards for entering an injunction and that, in considering the likelihood-of-success factor, the district court erred in applying Delaware law.

In entering a preliminary injunction, a court must consider the following Blackwelder factors:[2] "(1) the likelihood of irreparable harm to the plaintiff if the preliminary injunction is denied, (2) the likelihood of harm to the defendant if the requested relief is granted; (3) the likelihood that the plaintiff will succeed on the merits; and (4) the public interest." Direx Israel, Ltd. v. Breakthrough Med. Corp., 952 F.2d 802, 812 (4th Cir. 1991) (quoting Rum Creek Coal Sales, Inc. v. Caperton, 926 F.2d 353, 359 (4th Cir. 1991)). Although we review

_____

[2] These factors are taken from Blackwelder Furniture Co. v. Seilig Mfg. Co., 550 F.2d 189, 193-96 (4th Cir. 1977).

14

a grant of injunctive relief for abuse of discretion, we will overturn a district court's decision "if made under an improper legal standard" and will overturn the court's factual findings if, from our review of the record in its entirety, we are "`left with the definite and firm conviction that a mistake has been committed.'" Direx, 952 F.2d at 815 (quoting Rum Creek, 926 F.2d at 358).

Jarrard contends that the district court erred by failing to compartmentalize the Blackwelder factors. Specifically, she points to the following statement made by the district court:

> In this Circuit, the first step is to balance the harms. Clearly there will be harm to the Defendant with this decree, there is no question about it. And that is a substantial economic harm. But, it is a harm she bargained for. Therefore it doesn't impress me as a harm that particularly puts her in a very good equitable position.

Jarrard argues that this discussion reveals that the district court conflated the balancing-of-hardships factors and the likelihood-of-success factor.

We have observed that "the hardship balance and the likelihood of success determination are separate, sequential steps" and that "the balancing of hardships should precede any consideration of the likelihood of success." Direx, 952 F.2d at 817. But these separate tests are related to the overall equitable determination of whether the injunction should issue. Indeed, we have noted that the factors analyzed separately nevertheless must work in conjunction: "If the hardship balance tilts sharply and clearly in the plaintiff's favor, the required proof of likelihood of success is substantially reduced." Id. Thus, the balancing of hardships must be analyzed conceptually before and separately from the likelihood of success on the merits, but once a court has performed these separate analyses, it must then make the equitable determination whether to grant injunctive relief. In making this final determination, it is wholly appropriate for the court to discuss the various Blackwelder factors as they relate to each other.

In this case, the district court balanced separately the likelihood of irreparable harm to CIENA if an injunction did not issue against the

15

likelihood of harm to Jarrard if it did. The court observed that "knowl-edge is power" in the fast-moving, technologically advanced industry in which CIENA competes. The court noted that Jarrard had worked in a "key position" at CIENA and had moved into a "key position" with a direct competitor. The court concluded that Jarrard could irrep-arably harm CIENA by working for a direct competitor soon after resigning from CIENA.

The court also recognized that Jarrard would suffer economic hard-ship if she were enjoined from continuing her employment with Syca-more Networks and from working with any other competitors of CIENA. However, the judge looked at Jarrard's education and employment background, noting that "[s]he is able to do other things, certainly in the computer field, that don't directly compete with [CIENA]." The court concluded that the harm to Jarrard "is amelio-rated by the fact that she is not a one trick pony. According to her C-V here, she is a person with estima[ ]ble skills in this whole area. . . . So, she can get meaningful work and that diminishes the harm to her . . . ." In view of this record, we are satisfied that the district court's analysis of the balance of hardships was independent from its analysis of the likelihood that CIENA would succeed on the merits of its case.

Jarrard contends that in assessing the likelihood of success, the dis-trict court erred in concluding, based on explicit contract terms, that Delaware law would apply when construing a covenant not to com-pete. We reject this contention.

For its choice-of-law rules, Maryland subscribes to§ 187 of the Restatement (Second) of Conflict of Laws. See National Glass, Inc. v. J.C. Penney Properties, Inc., 650 A.2d 246, 248 (Md. 1994); Kronovet v. Lipchin, 415 A.2d 1096, 1104-05 (Md. 1980). Section 187 of the Restatement provides:

> The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the par-ticular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either

16

(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or

(b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue . . . .

Restatement (Second) of Conflict of Laws § 187(2) (1971).

Because CIENA was incorporated under the laws of Delaware and maintains its corporate charter under Delaware law, the district court determined that the parties to the noncompetition agreement had a reasonable basis for choosing Delaware law to govern their agreement. Just as the place where a limited partnership is organized is a factor demonstrating a "substantial relationship" for choice-of-law rules, see Kronovet, 415 A.2d at 1105, we conclude that a party's state of incorporation provides the necessary "substantial relationship" for application of its laws. Accordingly, even though CIENA's principal place of business is in Maryland, we hold that it is not unreasonable for CIENA to select the law of Delaware to govern its contractual relationships in view of the fact that it is organized under the laws of Delaware and continues to maintain its charter under those laws. See Valley Juice Ltd. v. Evian Waters of France, Inc., 87 F.3d 604, 608 (2d Cir. 1996); Schroeder v. Rynel, Ltd., 720 A.2d 1164, 1166 (Me. 1998).

Under Delaware law, covenants not to compete with reasonable time and geographical restrictions are enforceable, although not "mechanically." See McCann Surveyors, Inc. v. Evans, 611 A.2d 1, 3-4 (Del. Ch. 1987) ("[C]ovenants restricting future employment, in order to be valid, must be determined . . . to be reasonably limited geographically and with respect to the restriction on time," and must "foster a legitimate economic interest of the plaintiff" (citation omitted)). The district court here did not err in concluding, as a preliminary matter, that the noncompetition agreement in this case was reasonable in its geographical and durational limitations, at least until Jarrard advances facts to show otherwise. The court pointed to the national competition between CIENA and Sycamore Networks and to the

17

nature of the economic interests to be protected by CIENA. While this issue will ultimately be developed through further proceedings, the district court did not err in concluding at this stage that CIENA had the better case on the merits.

VI

For the foregoing reasons, we affirm the district court's preliminary injunction and remand with instructions to the district court to allow Jarrard expedited discovery sufficient to enable her to file a motion to dissolve the injunction within 30 days of this court's judgment.

AFFIRMED AND REMANDED WITH INSTRUCTIONS

18