**NUTRINOVA NUTRITION SPECIAL-TIES AND FOOD INGREDIENTS GMBH, and Nutrinova, Inc., Appellants,**

v.

**INTERNATIONAL TRADE COMMISSION,**
**Appellee,**

**and**

**Hangzhou Sanhe Food Company Ltd., Hangzhou Sanhe Food Additives Factory, JRS International, Inc., Dingsheng, Inc., and WYZ Tech, Inc., Intervenors.**

**No. 99–1293.**

United States Court of Appeals, Federal Circuit.

Aug. 25, 2000.

Larry L. Shatzer, II, Foley & Lardner, of Washington, DC, argued for appellants. With him on the brief were Charles F. Schill, and Melinda F. Levitt.

Cynthia P. Johnson, Attorney, Office of the General Counsel, U.S. International Trade Commission, of Washington, DC, argued for appellee. With her on the brief were Lyn M. Schlitt, General Counsel; James A. Toupin, Deputy General Counsel; and Rozann M. Stayden, Attorney.

Gary M. Hnath, Venable, Baetjer, Howard & Civilettti, LLP, of Washington, DC, argued for intervenors. With him on the brief was Michael P. Leary.

Before PLAGER, LOURIE, and BRYSON Circuit Judges.

PLAGER, Circuit Judge.

Nutrinova Nutrition Specialties and Food Ingredients GmbH, and Nutrinova, Inc. (collectively, "Nutrinova") own U.S. Patent No. 4,695,629 ("the '629 patent") which covers a process for producing an artificial sweetener, acesulfame potassium ("ASK"). After examining sample batches of ASK imported from the People's Republic of China which raised concerns that the samples were produced by unauthorized use of its patented process, Nutrinova requested that the International Trade Commission ("ITC" or "Commission") enjoin the importation of allegedly infringing ASK from China for violation of 19 U.S.C. § 1337 (1994). Section 1337 generally prohibits importation into the United States, the sale for importation, or sale within the United States after importation of a product that infringes a United States patent. After an investigation, the Commission found no infringement and declined to enjoin importation of ASK from China.

Nutrinova appeals from the Commission's findings and conclusions, arguing that, under 35 U.S.C. § 295 (1994), the Commission should have shifted the burden to the accused infringers to disprove infringement, rather than requiring that Nutrinova assume the burden of proving infringement. This is a case of first impression regarding the interpretation of § 295. Because there was no error in the manner in which the Commission allocated the burden of proof, and because substantial evidence supports the Commission's findings, we affirm.

## BACKGROUND

ASK is a high-potency artificial sweetener presently used in a wide variety of food

and drink products. There are several established methods of manufacturing ASK. Since different ingredients and steps are used, the different methods of manufacturing ASK typically produce batches with different by-products. The process covered by the '629 patent, also known as the sulfur trioxide ($SO_3$) process, uses common chemicals that do not require special safety handling. The patented process produces a product with high levels of sulfate by-products and, at most, minute amounts of fluoride by-products. In contrast, two other well-known processes for producing ASK, the fluorosulfonyl isocyanate ("FSI") process, and the aminosulfonyl fluoride ("ASF") process, use a series of toxic or hazardous substances. These processes produce products with little or no sulfate by-products, but a good amount of fluoride by-products.

Nutrinova obtained and tested two samples of ASK imported from China into the United States (designated by the parties as Fremd Nos. 127 and 128) and found that they contained high levels of sulfate and minute amounts of fluoride, characteristic by-products of the '629 patented process. Nutrinova then filed its complaint with the ITC, alleging that by reason of infringement of claims 1, 2, 3, 4, or 5 of the '629 patent, there was a violation of 19 U.S.C. § 1337(a)(1)(B) in the importation into the United States, the sale for importation, or sale within the United States after importation of ASK, blends of ASK, or products containing the ASK in question.

On November 14, 1997, the ITC ordered that an investigation be instituted. *See* 62 Fed.Reg. 62070 (1997). Nutrinova was named as the complainant, and Hangzhou Sanhe Food Co., Hangzhou Sanhe Food Additives Factory, JRS International, Inc., Dingsheng, Inc., and WYZ Tech, Inc. (collectively "Sanhe") were named as respondents.

The Commission assigned an administrative law judge ("ALJ") to conduct an Initial Determination, pursuant to the Commission's procedures. During the investigation, Nutrinova had difficulties obtaining Sanhe's cooperation in producing requested documents and information. For instance, despite receiving Nutrinova's document requests, Sanhe was slow in producing or allegedly did not produce a number of documents relating to the process it used in manufacturing its batches of ASK. In addition, Sanhe refused to permit a plant inspection, claiming it might violate Chinese law.

Nutrinova filed a motion to compel discovery. The ALJ granted the motion. At that point, Sanhe finally agreed to allow a plant inspection. When Nutrinova's personnel toured one of Sanhe's plants, they noticed that the walls had been freshly painted, which caused Nutrinova to speculate that the paint was necessary to cover up a recent conversion of the plant from use of one ASK manufacturing process to use of another one. Nutrinova's personnel took some samples of the ASK produced during the plant tour and had them tested. The testing showed that the samples from the plant tour had very low levels of sulfate and a significant amount of fluoride, unlike the two Fremd samples.

Sanhe also finally allowed Nutrinova to take the deposition of its chief chemist. During that deposition, Nutrinova learned from the chemist that Sanhe had, indeed, failed to produce certain documents that were responsive to Nutrinova's document requests.

Nutrinova filed a motion to sanction Sanhe for failing to comply with discovery orders. At this point Sanhe finally began to produce its documents, producing over 1,300 pages of documents from the close of discovery up to three days before the scheduled hearing. The ALJ, taking into account Sanhe's late production, advised Nutrinova that he would consider a motion to reopen the record at Sanhe's expense. Nutrinova declined to seek reopening of the record, preferring to stand on its objection to the admission of the late-provided evidence.

An evidentiary hearing was held from June 29, 1998, to July 10, 1998. On November 20, 1998, the ALJ issued a 227 page report, in which he determined that there was no infringement of the '629 patent by the respondents, and that consequently there was no basis to enjoin respondents' importation of ASK. On January 15, 1999, the Commission issued its Notice of final determination that there was no violation of § 1337, and that the Commission determined not to review the initial determination of the ALJ so finding, and not to review the ALJ's Order denying the motion for sanctions.

Nutrinova appeals from the Commission's final determination, raising three issues: under 35 U.S.C. § 295, should the ALJ have shifted the burden to the accused infringers to disprove infringement, rather than requiring that Nutrinova assume the burden of proving infringement; should the ALJ have imposed sanctions on Sanhe; and did the ALJ err in his fact-finding regarding whether there was infringement of the '629 patent.

### DISCUSSION

This is not a difficult case. Let us initially dispose of what is not in the case.

■ Nutrinova asks us to reexamine the findings that underlie the agency's conclusion with regard to non-infringement of the '629 patent. The Commission, acting through the ALJ, spent a week listening to various witnesses and then issued a detailed 227–page opinion. Under our review statute, the question before us regarding the fact-finding is whether substantial evidence in the record supports the agency's findings. *See* 19 U.S.C. § 1337(c) (1994); 5 U.S.C. § 706 (1994); *see also SSIH Equip. S.A. v. United States Int'l Trade Comm'n,* 718 F.2d 365, 371–72, 218 USPQ 678, 684 (Fed.Cir.1983). Even if we might have found some of the facts differently, or even if we might have drawn some inferences from the facts dif-

ferently, none of which we are inclined to do, that is not the role of an appellate court. Nutrinova invites us to reweigh the evidence and reexamine the credibility of the witnesses. We decline the invitation.

■ The primary issue in the case is whether the ALJ properly applied 35 U.S.C. § 295 to the case before him. As with other legal issues, we review the legal conclusion regarding proper application of § 295 without deference to the Commission. *See SSIH Equip.,* 718 F.2d at 371–72, 218 USPQ at 684.

This is a case of first impression. The statute at issue, 35 U.S.C. § 295, is relatively new, enacted in 1988 as part of the Omnibus Trade and Competitiveness Act and last amended in 1994 to read:

§ 295. Presumption: Product made by patented process

In actions alleging infringement of a process patent based on the importation, sale, offer for sale, or use of a product which is made from a process patented in the United States, if the court finds—

(1) that a substantial likelihood exists that the product was made by the patented process, and

(2) that the plaintiff has made a reasonable effort to determine the process actually used in the production of the product and was unable so to determine,

the product shall be presumed to have been so made, and the burden of establishing that the product was not made by the process shall be on the party asserting that it was not so made.

■ The statute on its face is a burden shifting mechanism. As a general proposition, the law places the burden of proving infringement on the patentee who alleges it. When two conditions are met, the statute shifts that burden and requires the alleged infringer to disprove infringement. The two conditions are that a finding is made by the court [1] that: 1) a substantial

---

**1.** It is possible that § 295 has no application to proceedings before the ITC, since the statute on its face applies to courts, not agencies.

likelihood exists that the product was made by the patented process, and 2) the plaintiff has made a reasonable effort to determine the process actually used in the production of the product and was unable so to determine. The statute also has a significant punitive element. It provides the trial court with a potent weapon to use against a non-cooperative defendant.

The statute thus works for the benefit of a patentee, but it also serves the needs of the court as a mechanism for enforcing its processes and orders. Nutrinova argues that the ALJ erred in waiting until after the hearing to rule on whether § 295 applied. According to Nutrinova, the ALJ should have ruled on that issue before trial, during the discovery process. Nutrinova points out that if the ALJ had done so, it would have saved Nutrinova from all the exasperation of Sanhe's limited and slow production.

Trial courts are generally given discretion to determine when decisions concerning procedural matters are to be decided. See, e.g., Ciena Corp. v. Jarrard, 203 F.3d 312, 319 (4th Cir.2000) ("[B]road discretion is given to the district court to manage the timing and process for entry of all interlocutory injunctions ...."); In re Temporomandibular Joint (TMJ) Implants Prod. Liab. Litig., 113 F.3d 1484, 1492 (8th Cir.1997) ("[P]laintiffs failed to show that the District Court abused its discretion regarding the timing of its entry of summary judgment ...."). Trial courts have this discretion because the facts of every case are different, and the appropriate time for a trial court to make a decision concerning a procedural matter depends on the circumstances.

The specific point during a trial when the trial court should decide a § 295 motion raised by the patentee will vary with the facts and circumstances of each case. It would be as arbitrary for this court to identify a specific point at which the ALJ must make his § 295 decision as

it would be for this court to mandate a specific point in a proceeding when a court must enter summary judgment. The patentee has every right to urge the court to apply § 295 when circumstances warrant it; likewise, the court has every right to exercise its discretion in determining at what point in the decisional process the statute will be brought into play.

Here the ALJ made a factual finding that Nutrinova failed to satisfy the second prong of § 295. To meet the second prong of § 295, Nutrinova had to show it was unable to determine the particular processes used in Sanhe's production of ASK. Nutrinova's own testing determined that the samples it collected during its tour of Sanhe's facility did not contain the characteristic by-products formed using the '629 patented process. Nutrinova argued to the court that its testing was not conclusive regarding whether the '629 process was used because it was possible, although there was no evidence offered to support the proposition, that the tested batches might have been subjected to post-processing to change the residual by-products in them. The ALJ was not convinced by Nutrinova's argument. He found that Nutrinova could, in fact, reasonably determine from testing whether the ASK produced at that facility was manufactured by the '629 process.

Nutrinova challenges that finding. Whether each of the two prongs of § 295 has been met is not determined subjectively by the plaintiff, but is determined objectively by the court. Because substantial evidence supports the ALJ's underlying finding that a reasonable plaintiff would be able to determine the process used, we find no error in the ALJ's conclusion that § 295 did not apply and the burden remained with Nutrinova to prove infringement.

However, the Commission did not raise that point, and we therefore treat it as waived for

purposes of this opinion.

Nutrinova also argues that the ALJ made various other errors, such as not imposing evidentiary sanctions on Sanhe. Here again we are being asked to review the ALJ's fact-finding—he specifically found that the delays in document production were not caused by bad faith, or a plan to deceive, or a flagrant disregard of discovery order, or other egregious conduct—and to second-guess the ALJ's administration of the trial process, a matter over which he has considerable discretion. The Commission found no error in the ALJ's handling of the case, nor do we. We have considered all of Nutrinova's arguments, but find them unpersuasive.

### CONCLUSION

The decision of the Commission is *AFFIRMED.*

### COSTS

No costs.