CHOICE HOTELS INTERNATIONAL, INC., Plaintiff,

v.

MADISON THREE, INC., Herbert G. Ingram, R. Norman Peters and David G. Massad, Defendants.

Civil No. AMD 98–634.

United States District Court, D. Maryland.

Oct. 13, 1998.

---

4. This ruling renders MOOT Defendant's Motion to Dismiss.

James G. Healy, Silver Spring, MD, for plaintiff.

Steven M. Pavsner, Joseph, Greenwald & Laake, Greenbelt, MD, Roy A. Bourgeois, Bourgeois Dresser & White, Worcester, MA, for defendants.

## MEMORANDUM

DAVIS, District Judge.

The plaintiff, Choice Hotels International, Inc., filed suit against defendants Madison Three, Inc., Herbert G. Ingram, R. Norman Peters and David G. Massad, for damages arising out of an alleged breach of a series of agreements related to the operation of a hotel in Worcester, Massachusetts, under Choice's Clarion® trademark. Jurisdiction is based on diversity of citizenship. Defendants have filed preliminary motions to dismiss for lack of personal jurisdiction and for improper venue under Fed.R.Civ.P. 12(b)(2) and (b)(3). Alternatively, defendants seek a transfer of the case to the United States District Court for the District of Massachu-

setts pursuant to 28 U.S.C. § 1404(a). The motions have been fully briefed and no hearing is necessary. For the reasons stated below, the motions shall be denied.

(i)

The parties have filed affidavits in support of their respective positions on the preliminary motions; the facts are generally not disputed. What is disputed is the proper application of settled law to the undisputed facts.

Choice is a Delaware corporation with its principal place of business in Silver Spring, Maryland. Madison is a Massachusetts corporation. It was organized in 1990 to operate the hotel which became a licensee of Choice. The individual defendants are shareholders and/or officers of Madison; all are citizens of Massachusetts, and none has ever traveled to Maryland in connection with the dispute presented in this case or the underlying agreements.

Choice's predecessor-in-interest, acting through its agent, John Stetz, solicited defendant Ingram, in his capacity as president of Madison, to operate a hotel under the Clarion mark. Ingram and Stetz negotiated the license agreement wholly without the state of Maryland, that is, in Massachusetts, or by phone between Ingram in Massachusetts and Stetz in either Maine or New Jersey. At the conclusion of negotiations, Madison signed the contract in Massachusetts and then mailed it to Maryland, where is was accepted by Choice.

The license agreement, having a term of 20 years, states that the parties entered into the contract in Silver Spring, Maryland. It also states that "[t]his Agreement shall be governed and construed according to the laws of the State of Maryland without reference to its conflict of laws and [sic] principles." It stipulates, *inter alia*, that in return for an initial fee and monthly payments, Madison would receive the benefit of using the Clarion mark. As might be expected, the agreement is a form contract that includes an integration clause providing that the license agreement is the entire agreement.

Contemporaneously with the execution of the license agreement, the individual share-holders of Madison executed a Guaranty in favor of Choice. Under the Guaranty, the individual defendants "unconditionally and irrevocably ... guarantee ... that [Madison] ... will perform throughout the term of the License Agreement each and every covenant, payment, or obligation" the corporation promised to perform. The Guaranty also recites, in part, that "[i]f legal action is taken to enforce this Guaranty, such action may be maintained alone or joined with any action or other proceeding against" the corporation.

Madison began operating its hotel under the Clarion name in June 1990. It allegedly breached its contract with Choice sometime in 1997 by failing to maintain its payments. Following the alleged breach, Choice gave Madison notice of its intent to terminate the agreement in February 1998. Choice instituted this action thereafter.

(ii)

Once a defendant raises a Rule 12(b)(2) defense, the plaintiff bears the burden of proving that the court can exercise personal jurisdiction over the defendant, *Nichols v. G.D. Searle & Co.*, 783 F.Supp. 233, 237 (D.Md.1992), *aff'd*, 991 F.2d 1195 (4th Cir.1993), by a preponderance of the evidence. *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 59–60 (4th Cir.1993); *Cape v. von Maur*, 932 F.Supp. 124, 125 (D.Md.1996).[1] Plaintiff must show both that Maryland's Long–Arm Statute confers jurisdiction and that the exercise of jurisdiction does not offend due process considerations. *Blue Ridge Bank v. Veribanc, Inc.*, 755 F.2d 371, 373 (4th Cir.1985).

In recent years, Maryland's appellate courts and the United States Court of Appeals for the Fourth Circuit have shown a willingness to collapse those two inquiries into a single analysis, since the Maryland Long–Arm Statute is to be interpreted as extending to constitutional limits. *See Camelback Ski Corp. v. Behning*, 307 Md. 270, 274, 513 A.2d 874 (1986), *vacated and remanded*, 480 U.S. 901, 107 S.Ct. 1341, 94 L.Ed.2d 512 (1987), *opinion on remand*, 312 Md. 330, 539 A.2d 1107, *cert. denied*, 488 U.S.

---

1. When the court determines the issue without a hearing, plaintiff's burden is to establish *prima facie* that personal jurisdiction may be exercised. *Mylan Labs.*, 2 F.3d at 60.

849, 109 S.Ct. 130, 102 L.Ed.2d 103 (1988); *Stover v. O'Connell Assoc., Inc.,* 84 F.3d 132, 135–36 & n* (4th Cir.), *cert. denied,* — U.S. ——, 117 S.Ct. 437, 136 L.Ed.2d 334 (1996) [2]; *cf. ESAB Group, Inc. v. Centricut, Inc.,* 126 F.3d 617, 623 (4th Cir.1997) (construing South Carolina Long–Arm Statute), *cert. denied,* — U.S. ——, 118 S.Ct. 1364, 140 L.Ed.2d 513 (1998). In assessing the sufficiency of a defendant's contacts with the forum state, the "constitutional touchstone" is whether the contacts were "purposefully established" by the defendant such that he "will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474–75, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (citations omitted).

▮ The Supreme Court has drawn a distinction between "specific" jurisdiction and "general" jurisdiction. A court has specific jurisdiction over a defendant when a cause of action arises out of the defendant's minimum contacts with the forum. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). "Specific personal jurisdiction requires a tri-partite showing that: (1) the nonforum defendant purposely directed its activities toward residents of the forum state or purposely availed itself of the privilege of conducting activities therein; (2) plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) the forum's exercise of personal jurisdiction in the case is reasonable, i.e., is consistent with 'fair play and substantial justice.'" *Cape,* 932 F.Supp. at 126 (quoting *Burger King Corp.,* 471 U.S. at 477–78, 105 S.Ct. 2174). Choice asserts that specific jurisdiction exists in this case over all of the defendants by virtue of the agreements entered into in respect to the defendant's hotel franchise.

(iii)

▮ I agree with Choice that application of the above principles here establishes *prima facie* that both the corporate defendant

and the individual defendants are subject to jurisdiction in Maryland. As to the corporate defendant, Madison, the facts of the instant case are remarkably similar to those in *Burger King Corp.,* which held that a federal court in Florida may constitutionally exercise personal jurisdiction over the operator of a Michigan Burger King franchise in a suit arising out of the franchise agreement. 471 U.S. at 487, 105 S.Ct. 2174. The Court reasoned that the Michigan franchisee purposely availed himself of the benefits of Florida law by entering into a significant long-term commercial franchise agreement, from which substantial benefits would accrue to him in Michigan, with Burger King, a citizen of the forum state. *Id.* at 478–82, 105 S.Ct. 2174. Similarly here, Madison sought to benefit (by operating its local inn under a nationally-recognized mark) from its execution of the franchise agreement, and therefore, to avail itself of the benefits of Maryland law, as Maryland is Choice's principal place of business. Importantly, as in *Burger King Corp., id.* at 481, 105 S.Ct. 2174, the agreement here provides that the plaintiff's state's law applies to disputes under the contract. The fact that the negotiations between the parties did not occur in Maryland, while certainly relevant, *id.* at 478–79, 105 S.Ct. 2174, is not determinative.

It appears from decisions attached to Choice's opposition to defendants' motion to dismiss that in several unreported cases at least four other judges of this court have considered whether, under a *Burger King Corp.* analysis, the franchise agreements utilized by Choice and its predecessor-in-interest ordinarily create sufficient "minimum contacts" between out-of-state franchisees and Maryland so as to justify the exercise of jurisdiction over such franchisees by Maryland courts. *See Choice Hotels International, Inc. v. Stolaruk,* No. AW 95–1860 (slip op. July 1, 1996) (Williams, J.); *Choice Hotels International, Inc. v. Hotel Corp. of America, Inc.,* No. MJG 95–2669 (slip op. March 25, 1996) (Garbis, J.); *Choice Hotels Interna-*

---

**2.** The provision of Maryland's Long–Arm statute relevant here is as follows:

(b) In general.—A court may exercise personal jurisdiction over a person, who directly or by an agent:

(1) Transacts any business or performs any character of work or service in the State ... Md.Code Ann., Cts. & Jud.Proc. § 6–103(b)(1).

*tional, Inc. v. Raheem,* No. PJM 94–992 (Order of March 6, 1995) (Messitte, J.); *Choice Hotels International, Inc. v. Patt,* No. AW 94–2770 (slip op. April 17, 1995) (Williams, J.); *Choice Hotels International, Inc. v. Turnpike Motor Inns, Inc.,* No. MJG 92–7 (slip op. August 27, 1993) (Garbis, J.); *Quality Inns International, Inc. v. CIM Partnership,* No. R 88–2785 (slip op. January 9, 1989) (Ramsey, J.). In each of those cases, the exercise of personal jurisdiction was sustained and motions to dismiss were denied.

I embrace the analysis in those cases and conclude that a franchisee's long-term franchise agreement with Choice, a Maryland resident, which imposes continuing significant contractual duties upon the franchisee, e.g., reporting and payment obligations, as well as Choice, constitutes "transacting business" under Maryland's Long–Arm statute. Accordingly, the conclusion follows that, by entering into the license agreement and assuming the burdens thus imposed having a significant Maryland nexus, Madison purposely directed significant commercial activity toward Maryland. Choice's cause of action clearly arises from Madison's forum-related "contacts," and Maryland's exercise of personal jurisdiction is therefore reasonable, and not remotely based on contacts that are "random," "fortuitous" or "attenuated."

 The issue of personal jurisdiction over the individual defendants is not as clear. The sole basis upon which Choice asserts jurisdiction may be exercised over the individual defendants is their execution of the guaranty. In that document, the individual defendants "guarantee[d] ... that [Madison would] perform ... each and every covenant, payment [and] obligation" owed by Madison to Choice. Nowhere in the guaranty, however, or in any other document, have the individual defendants consented to jurisdiction in this state. Nor is the license agreement expressly incorporated into the guaranty. It is undisputed that the individual defendants have had no relevant physical contact with Maryland.

Nonetheless, I am persuaded that, *prima facie,* jurisdiction exists over the individual defendants based on their execution of the guaranty, when their execution of the guaranty is viewed in light of the provisions of, and the facts surrounding the execution of,

the license agreement. First, the guaranty provides that Choice may join a suit against Madison, its licensee, with a suit against the individual defendants who executed the guaranty. Although this provision certainly does not *compel* the conclusion that the individual defendants could reasonably foresee being haled into a Maryland court, *prima facie,* that language supports the assertion that the individual defendants had notice that a lawsuit under the guaranty could be litigated here.

Second, and more importantly, the guaranty was given in consideration and as an inducement for the license agreement with Madison. In an earlier case presenting a similar challenge by guarantors of a Choice licensee, another judge of this court found this factor persuasive. *See Choice Hotels International, Inc. v. Hotel Corp. of America, Inc.,* Case No. MJG 95–2669 (slip op. at 5–6, March 25, 1996) (Garbis, J.) (citing *Mellon Bank v. Farino,* 960 F.2d 1217, 1224–26 (3rd Cir.1992); *Reliance Elec. Co. v. Luecke,* 695 F.Supp. 917, 921 (S.D.Ohio 1988)). *See also Kimball International, Inc. v. Warmack,* 1989 WL 432179 (S.D.Ind. March 22, 1989) (nonresident guarantors subject to personal jurisdiction where they owned stock in company benefiting from the guaranty and guaranty was given expressly to obtain extension of credit for company) (collecting cases); *and see* Susan M. Kole, Annotation, *Execution, Outside of Forum, of Guaranty of Obligations Under Contract to be Performed Within Forum State as Conferring Jurisdiction Over Nonresident Guarantors Under "Long–Arm" Statute or Rule of Forum,* 8 A.L.R.5th 664 (1995 & 1998 Supp.).

Even if the individual defendants are, as they claim to be, mere passive investors in the corporate licensee, insofar as they induced Choice to enter into the license agreement with Madison by furnishing their personal guarantees, they have "transacted business" within the contemplation of the Maryland Long–Arm Statute. The guaranty, like the license agreement, was accepted by Choice in Maryland. Thus, although the guaranty contains no choice of law provision, Maryland law will apply to construe its terms, which are famously unambiguous, in

any event. Furthermore, I am persuaded that, by virtue of the inextricable nature of the two separate agreements, and the fact that the one (the guaranty) induced the other (the license agreement), it is fair in the constitutional sense to charge the individual defendants (who as stockholders are persons who would be benefited by the license agreement between Choice and Madison) to litigate the question of their liability in a Maryland court. Accordingly, I am persuaded that the exercise of personal jurisdiction over the individual defendants, as well as over the corporate defendant, comports with due process.

### (iv)

▮ Venue is proper in this district. Under 28 U.S.C. § 1391(a), venue is proper in Maryland if "a substantial part of the events ... giving rise to the claim" occurred in Maryland. I agree with Choice that the statutory test is satisfied. The agreements under which suit is brought were formed in Maryland and Choice secured its right to institute suit by performing its contractual duties in this state. Thus, defendants' challenge to venue in this district fails.

### (v)

▮ Defendants contend, in the alternative, that the case should be transferred to their home district, the United States District Court for the District of Massachusetts. Under 28 U.S.C. § 1404(a), a court may transfer a lawsuit to any other district where it might have been brought if the transfer would provide a more convenient forum for the parties and witnesses and serve the interests of justice.[3] The decision to transfer is committed to the sound discretion of the trial court. *Piper Aircraft Company v. Rey-*

*no,* 454 U.S. 235, 257, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981).

The fact that this suit could have been brought in the United States District Court for the District of Massachusetts is not disputed. As for the convenience factors which courts have routinely examined in applying § 1404(a), those considerations are largely a wash in this case.[4] On balance, each party will suffer some inconvenience in connection with the trial of this case, no matter the forum. Each would like to have access to local witnesses and each would like to avoid the inconvenience of litigating away from home. Each would have to bear the incidental costs of defending a suit outside of his or its state of residence.

To a large extent, then, there has been no substantial showing by defendants that a transfer under the circumstances of this case would do anything other than shift the greater burden and inconvenience of trial from defendants to plaintiff, which is not a proper purpose of a transfer of venue. *Plant Genetic Sys., N.V.,* 933 F.Supp. at 527 (citing *Tools USA & Equip. Co. v. Champ Frame Straightening Equip., Inc.,* 841 F.Supp. 719, 721 (M.D.N.C.1993)). I note that a plaintiff's choice of forum is entitled to a degree of deference, although "the weight given to this factor should be commensurate with the degree it impacts the policy behind section 1404(a), that is to make trial 'easy, expeditious and inexpensive.'" *Laughlin v. Edwards Business Machines,* 155 F.R.D. 543, 545 (W.D.Va.1994), *quoting Gulf Oil v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). *See also Zawatsky v. John Alden Life Insurance Co.,* 822 F.Supp. 1215, 1217 (D.Md.1993), *appeal dismissed,* 7 F.3d 228, 1993 WL 385343 (4th Cir.1993) (table)

---

3. Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

4. Those factors include: (1) the plaintiff's initial choice of forum; (2) relative ease of access to sources of proof; (3) availability of compulsory process for attendance of unwilling witnesses, and the cost of obtaining attendance of willing and unwilling witnesses; (4) possibility of a view of the premises, if appropriate; (5) enforceability of a judgment, if one is obtained; (6) relative

advantage and obstacles to a fair trial; (7) other practical problems that make a trial easy, expeditious, and inexpensive; (8) administrative difficulties of court congestion; (9) local interest in having localized controversies settled at home; (10) appropriateness in having a trial of a diversity case in a forum that is at home with the state law that must govern the action; and (11) avoidance of unnecessary problems with conflicts of laws. *Plant Genetic Sys., N.V. v. Ciba Seeds,* 933 F.Supp. 519, 527 (M.D.N.C.1996) (citing *Datasouth Computer Corp. v. Three Dimensional Technologies, Inc.,* 719 F.Supp. 446, 450–51 (W.D.N.C.1989)).

("Although a plaintiff's choice of forum is entitled to deference, his choice is not sacrosanct.").

Upon my consideration of the relevant factors, *see Plant Genetic Sys., N.V.,* 933 F.Supp. at 527, I am not persuaded that the "interests of justice" will be advanced by a transfer of venue. Accordingly, the motion for a transfer of venue under § 1404(a) shall be denied.

(vi)

For the reasons discussed above, I conclude that this court may properly exercise personal jurisdiction over defendants and that venue lies in this district. Furthermore, no transfer of venue is warranted. A separate order follows.

ORDER

In accordance with the foregoing Memorandum, it is this 13th day of October, 1998, by the United States District Court for the District of Maryland, ORDERED

(1) That Defendants' motions to dismiss is DENIED; and it is further ORDERED

(2) That the Defendants' motion to transfer is DENIED; and it is further ORDERED

(3) That the Defendants shall file an answer to the complaint on or before October 27, 1998; and it is further ORDERED

(4) That the Clerk shall TRANSMIT a copy of the foregoing Memorandum and this Order to the attorneys of record.