Ben REILLY, et al., Plaintiffs,

v.

Jack P. CHAMBERS, et al., Defendants.

No. Civ.A. 5:02–0415.

United States District Court,
S.D. West Virginia,
Beckley Division.

Aug. 8, 2002.

Paul O. Clay, Jr., Fayetteville, West Virginia, for plaintiffs.

Wayne S. Stonestreet, Bluefield, West Virginia, for defendants.

## MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

Pending is Defendants' motion to dismiss. The motion is **DENIED.**

## I. FACTUAL BACKGROUND

Plaintiffs Ben Reilly and Paul Rightenour are Pennsylvania residents who own real estate in West Virginia. Defendant Jack Chambers is a Virginia resident. Chambers' fellow Defendant, Mac Wooden Company (MWC), is a Virginia corporation owning real estate in West Virginia. The shares of MWC are located in Virginia and held entirely by Chambers. Plaintiffs assert MWC's West Virginia real estate is its sole significant asset.

On October 30, 2001 the parties entered a contract for sale of MWC's stock. Chambers signed the contract in Virginia and Plaintiffs signed in West Virginia. The contract provides:

> The *obligations hereunder shall be performed on December 3, 2001 at 2:00 p.m. at the offices of James C. Blankenship, III, Esquire, 105 Wiseman Avenue, Fayetteville, West Virginia*, or at such other place and time as the parties may mutually and agreeably choose.

(Not. of Remov., Ex. A at ¶ 2 (emphasis added).)

On December 3, 2001 the parties appeared for performance and consummation in West Virginia as agreed. Further agreement was reached by them to execute and hold all documents in escrow, including the MWC stock certificates, a promissory note for $225,000.00, and a deed of trust securing the note. Plaintiffs also had available at closing a check in the amount of $200,000.00 made payable to the closing attorney for deposit in his escrow account. The closing awaited only receipt of a Deed of Correction from Pegasus Resource Company to MWC for its West Virginia real estate, the primary asset desired by Plaintiffs.

Contemporaneous with closing, Plaintiffs negotiated a contract with Columbia West Virginia Corporation for the sale of substantial timber from the MWC property. Plaintiffs assert Chambers was aware of this contract with Columbia. On December 5, 2001, however, Chambers revoked the agency status of the closing attorney and demanded return of the stock certificates.

On March 15, 2002 Plaintiffs instituted this action in state court with a two-count complaint. Plaintiffs allege breach of contract and detrimental reliance.[1] They request, *inter alia*, that MWC's stock be transferred to them in accordance with the parties' contract.

On May 2, 2002 Defendants removed. Defendants then moved for dismissal based on (1) lack of subject matter jurisdiction, (2) lack of personal jurisdiction; (3) improper venue; and (4) failure to state a claim.

## II. DISCUSSION

### A. Lack of Subject Matter Jurisdiction

■ Defendants assert the Court lacks subject matter jurisdiction because "[n]o West Virginia Court has subject matter jurisdiction to require a non-resident ... to transfer stock of a foreign corporation that does not do business in West Virginia and which stock is held outside the jurisdictional boundaries of West Virginia." (Memo. in Supp. at 2.) Defendants cite no authority for the proposition. Indeed, the law is to the contrary.

Congress has granted defendants in state court the power to remove to federal court when the requirements of original

---

1. The complaint requested entry of "an Order temporarily restraining the Respondent[s] ... from entering into contracts or transferring the subject real estate...." (Compl.¶ 10.) The Court has adopted the practice of not proceeding with requests for temporary injunctive relief absent a motion requesting such. Plaintiffs have never formally moved for the requested interlocutory relief.

federal jurisdiction are satisfied. *See* 28 U.S.C. § 1441(a); *McCutcheon v. Valley Rich Dairy*, 81 F.Supp.2d 657, 659 (S.D.W.Va.2000). One avenue for original, federal subject matter jurisdiction is found in 28 U.S.C. § 1332:

> (a) The district courts shall have original jurisdiction of all civil actions where [1] the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and [2] is between ... citizens of different States....

*Id.* In the instant case, the parties are citizens of different states. Likewise, it appears the amount in controversy is easily satisfied. *Gould v. Artisoft, Inc.*, 1 F.3d 544, 547 (7th Cir.1993) ("If the defendant can establish to a reasonable probability that the value of the stock in a private transaction would exceed the jurisdictional amount, that requirement is satisfied."). The deal for the stock struck between the parties following their arms-length negotiations is the best indicator of the true value of the stock, a value that exceeds the jurisdictional minimum.

By virtue of this subject matter jurisdiction, and assuming Plaintiffs can demonstrate personal jurisdiction, the Court enjoys plenary authority to order Chambers to transfer the MWC stock to Plaintiffs even if the stock is physically held outside this State. Although not often employed, *Rule 70, Federal Rules of Civil Procedure*, ultimately may have application here:

> If a judgment directs a party to execute a conveyance of land or to deliver deeds or other documents or to perform any other specific act and the party fails to comply within the time specified, the court may direct the act to be done at the cost of the disobedient party by some other person appointed by the court and the act when so done has like effect as if done by the party. On application of the party entitled to performance, the clerk shall issue a writ of attachment or se-

questration against the property of the disobedient party to compel obedience to the judgment. The court may also in proper cases adjudge the party in contempt. If real or personal property is within the district, the court in lieu of directing a conveyance thereof may enter a judgment divesting the title of any party and vesting it in others and such judgment has the effect of a conveyance executed in due form of law. When any order or judgment is for the delivery of possession, the party in whose favor it is entered is entitled to a writ of execution or assistance upon application to the clerk.

Fed.R.Civ.P. 70 (emphasis added). The underscored language appears to presuppose a district court may enter a turnover order, having an effect *in personam* beyond its jurisdictional boundaries. *See* 12 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure* § 3021 (2d ed. 1997) ("[A] court may compel action outside of its jurisdiction by its order with regard to persons and property within its jurisdiction. 'Equity courts have known for a long time how to impose onerous alternatives at home to the performance of affirmative acts abroad as a means of getting those affirmative acts accomplished.'") (quoted authority omitted); *United States v. Ross*, 302 F.2d 831, 834 (2nd Cir.1962) ("The District Court's order to Ross to turn over his stock certificates to the receiver was not in excess of the court's statutory authorization. The court had personal jurisdiction over Ross, acquired by personal service of summons on his authorized agent. Personal jurisdiction gave the court power to order Ross to transfer property whether that property was within or without the limits of the court's territorial jurisdiction.").

Based on the foregoing, the Court **DENIES** that portion of the motion to dismiss

asserting lack of subject matter jurisdiction.

### B. Lack of Personal Jurisdiction

■ Defendants next assert the Court lacks personal jurisdiction. One applicable West Virginia long-arm statute is found in *West Virginia Code* Section 56–3–33. Section 56–3–33 provides:

(a) The engaging by a nonresident, or by his or her duly authorized agent, in any one or more of the acts specified in subdivisions (1) through (7) of this subsection shall be deemed equivalent to an appointment by such nonresident of the secretary of state, or his or her successor in office, to be his or her true and lawful attorney upon whom may be served all lawful process in any action or proceeding against him or her, in any circuit court in this state, including an action or proceeding brought by a nonresident plaintiff or plaintiffs, for a cause of action arising from or growing out of such act or acts, and the engaging in such act or acts shall be a signification of such nonresident's agreement that any such process against him or her, which is served in the manner hereinafter provided, shall be of the same legal force and validity as though such nonresident were personally served with a summons and complaint within this state:

(1) Transacting any business in this state;

. . . .

(6) Having an interest in, using or possessing real property in this state;

(b) When jurisdiction over a nonresident is based solely upon the provisions of this section, *only a cause of action arising from or growing out of one or more of the acts specified in subdivisions (1) through (7), subsection (a) of this sec-*

*tion may be asserted against him or her.*

*Id.* (emphasis added).

In *In re Celotex Corp.*, 124 F.3d 619 (4th Cir.1997), the Court of Appeals discussed the standards for determining whether a defendant is subject to personal jurisdiction:

In order for a court to validly exercise personal jurisdiction over a non-resident defendant: (1) a statute must authorize service of process on the non-resident defendant, and (2) the service of process must comport with the Due Process Clause. *Because the West Virginia long-arm statute is coextensive with the full reach of due process, it is unnecessary in this case to go through the normal two-step formula for determining the existence of personal jurisdiction. Rather, the statutory inquiry necessarily merges with the Constitutional inquiry* . . . .

A court's exercise of personal jurisdiction over a non-resident defendant is consistent with the Due Process Clause if the defendant has sufficient "minimum contacts" with the forum such that requiring the defendant to defend its interests in the forum does not "offend 'traditional notions of fair play and substantial justice.'" Later cases have clarified that the minimum contacts must be "purposeful." This "purposeful" requirement rests on the basic premise that traditional notions of fair play and substantial justice are offended by requiring a non-resident to defend itself in a forum when the non-resident never purposefully availed itself of the privilege of conducting activities within the forum, thus never invoking the benefits and protections of its laws. Moreover, this "purposeful" requirement "helps ensure that non-residents have fair warning that a particular activity may subject them to litigation within the forum."

When, as here, a court's power to exercise personal jurisdiction over a non-resident defendant is challenged by a motion under Federal Rule of Civil Procedure 12(b)(2), "the jurisdictional question thus raised is one for the judge, with the burden *on the plaintiff ultimately* to prove the existence of a ground for jurisdiction by a preponderance of the evidence." Furthermore, when, as here, a district court rules on a Rule 12(b)(2) motion *without conducting an evidentiary hearing or without deferring ruling pending receipt at trial of evidence relevant to the jurisdictional issue, but rather relies on the complaint and affidavits alone,* "the burden on the plaintiff is simply to make a prima facie showing of a sufficient jurisdictional basis in order to survive the jurisdictional challenge." "In considering a challenge on such a record, the court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction."

*Id.* at 627–28 (citations and quoted authority omitted).

First, although the two jurisdictional prerequisites merge here given the breadth of the West Virginia long-arm statute, the long-arm statute is nonetheless satisfied. MWC, acting through its agent Chambers, both owns real estate in this State and this action grows out of MWC's possession of such real estate. To the extent this analysis does not also implicate jurisdiction over Chambers, his execution of the contract, and that agreement's performance in this State, is sufficient to satisfy the transacting-business prong of the long-arm statute.

 Looking to the due process analysis, three factors require consideration. The first two factors examine (1) the extent to which Defendants "purposefully avail[ed]" themselves of the privilege of conducting activities in West Virginia, thus invoking the benefits and protections of its laws, and (2) whether Plaintiffs' claims arise out of those West Virginia-related activities.

Here, Defendants were voluntary participants in a transaction that was to be performed in West Virginia. Further, Defendants were on notice the long-arm statute reached those persons possessing real estate located in West Virginia. Also, Defendants agreed their contract and their "legal relations" would be governed by and construed in accordance with the laws of West Virginia. The Court concludes the first two due process prongs are satisfied. Finally, Plaintiffs' claims arise directly out of these contacts by MWC and Chambers.

The third and final consideration for specific jurisdiction under the due process clause is whether the exercise of judicial power over Defendants would be constitutionally reasonable. *Christian Science Bd. of Dirs. of First Church of Christ, Scientist v. Nolan,* 259 F.3d 209, 217 (4th Cir. 2001), guides the inquiry:

In determining whether jurisdiction is constitutionally reasonable, we may evaluate "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." More generally, our reasonableness analysis is designed to ensure that jurisdictional rules are not exploited "in such a way as to make litigation 'so gravely difficult and inconvenient' that a party unfairly is at a 'severe disadvantage' in comparison to his opponent.' "

*Id.*

The potential burdens on Defendants do not appear onerous. For example, Defen-

dants' home state is contiguous to this forum. Examination of this and other factors, along with the remaining due-process considerations, demonstrate the constitutional reasonableness of exercising jurisdiction over Defendants. Doing so ensures jurisdictional rules are not exploited "in such a way as to make litigation 'so gravely difficult and inconvenient' that a party unfairly is at a 'severe disadvantage' in comparison to his opponent.' " *Id.*

Based on the foregoing, the Court **DENIES** that portion of the motion to dismiss asserting lack of personal jurisdiction.

### C. Lack of Venue

■ Title 28 U.S.C. § 1391(a) provides: (a) A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

. . . .

(c) For purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced.

*Id.*

The same contacts with West Virginia supporting the exercise of personal jurisdiction over Defendants also provide a basis for venue here. Section 1391(a)(2) provides a civil action founded on diversity of citizenship may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." *Id.* The key event in this case is the putative breach by Chambers. The breach occurred following the scheduled performance of the contract in West Virginia when Chambers contacted the closing agent in West Virginia and instructed him not to proceed. Although this action is in its early stages, the Court has little difficulty envisioning many of the events and facts central to this case are anchored in West Virginia. Moreover, the very property that is at the center of the parties' dispute is located in this State. Accordingly, a "substantial part of the events or omissions giving rise" to Plaintiffs' claims occurred in the Southern District of West Virginia, providing venue here under § 1391(a)(2).

Based on the foregoing, the Court **DENIES** that portion of the motion to dismiss asserting lack of venue.

### D. Dismissal for Failure to State a Claim

Our Court of Appeals has often stated the settled standard governing the disposition of a motion to dismiss pursuant to *Rule* 12(b)(6), *Federal Rules of Civil Procedure:*

> In general, a motion to dismiss for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle it to relief. In considering a motion to dismiss, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff.

*Mylan Laboratories, Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir.1993) (citations omitted); *see also Brooks v. City of Winston–Salem,* 85 F.3d 178, 181 (4th Cir. 1996); *Gardner v. E.I. Dupont De Nem-*

*ours and Co.,* 939 F.Supp. 471, 475 (S.D.W.Va.1996).

In view of the very liberal standard governing a *Rule* 12(b)(6) motion, Plaintiffs have plainly stated a claim upon which relief may be granted. Accordingly, that portion of the motion to dismiss seeking relief under *Rule* 12(b)(6) is **DENIED.**

The Clerk is directed to send a copy of this Memorandum Opinion and Order to counsel of record and to publish a copy on the Court's public website at www.wvsd.uscourts.gov.