MTGLQ INVESTORS, L.P.

v.

Jerry GUIRE, et al.

No. CIV.A. CCB–03–1894.

United States District Court, D. Maryland.

Oct. 7, 2003.

Jonathan Todd Blank, McGuire Woods LLP, Baltimore, MD, for plaintiff.

Robert W. Hesselbacherm Jr., Wright Constable and Skeen, LLP, Baltimore, MD, for defendant.

## *MEMORANDUM*

BLAKE, District Judge.

Now before the court is a motion by the defendants, Jerry Guire, Restaurant Associates, LLC, Bridgeport Restaurant, LLC,

Lavale Restaurant, LLC, Leesburg Restaurant, LLC, and Morgantown Sabraton Restaurant, LLC, to dismiss or transfer venue. The parties have fully briefed the issues and no oral argument is necessary. Local Rule 105.6. For the reasons stated below, the motion will be granted and this case will be transferred to the Northern District of West Virginia.

## BACKGROUND

On May 31, 2000, five of the defendants, namely, Restaurant Associates, LLC, Bridgeport Restaurant, LLC, Lavale Restaurant, LLC, Leesburg Restaurant, LLC, and Morgantown Sabraton Restaurant, LLC (collectively, the "LLC defendants"), entered an agreement to borrow approximately $4,320,000 from Bay View Franchise Mortgage Acceptance Company ("Bay View"). (Compl.¶¶ 8–10, Ex. A.) The purpose of the loan was to finance the acquisition of three Ponderosa steakhouse restaurants, one in LaVale, Maryland, one in Bridgeport, West Virginia, and a third in Morgantown, West Virginia. (Compl. ¶ 12; Def.'s Mot. to Dismiss or Transfer Venue at 2.) In exchange for the loan, the five LLC defendants executed three promissory notes in favor of Bay View, each of which was secured by a deed of trust to one of the three restaurant properties.[1] (Compl.¶ 12, Ex. B, C, D, F, G, H.) The sixth defendant, Jerry Guire, executed the notes in his capacity as a member of each of the five LLCs. (Compl.Ex. B, C, D.) He also personally guaranteed the notes. (Compl.Ex. E.)

Mr. Guire is a West Virginia resident (Compl.¶ 7), and the five LLC defendants are all West Virginia entities (Comp.¶¶ 2–6). Two of them are registered to do business in Maryland. (Compl.¶¶ 2–3.) Bay View is a California entity (Compl. ¶ 8), but the agreement provided that all notices and communications were to be sent to its place of business in Connecticut (Compl. Ex. A at 25). The agreement was to be governed by Connecticut law (Compl. Ex. A at 26–27), and both the agreement and the promissory notes included statements of the borrowers' consent to jurisdiction in that state (Compl. Ex. A. at 27, Ex. B at 11–12, Ex. C at 11–12, Ex. D at 11).

On January 16, 2003, Bay View Bank, N.A. ("Bay View Bank"), a successor entity to Bay View, sent Mr. Guire and his accountant, Barry Parks, a notice indicating that the LLC defendants had been in default on their loan obligations as of January 1, 2003. (Compl.Ex. L.) On March 31, 2003, Bay View Bank assigned its interest in the promissory notes to MTGLQ Investors, L.P. ("MTGLQ"), a Delaware limited partnership with a business address in New York. (Compl. at 1; Compl. Ex. I, J, K.) On June 4, 2003, MTGLQ sent a notice of default and acceleration to the LLC defendants and to Mr. Guire demanding repayment of the debt. (Compl.Ex. M.)

On June 27, 2003, MTGLQ filed a complaint in the District of Maryland, alleging breach of contract by the defendants. Four of the five LLC defendants have since filed bankruptcy petitions in the United States Bankruptcy Court for the Northern District of West Virginia and suggestions of bankruptcy in this court. (*See* Docket Nos. 3, 4, 7, 8.) On July 31, 2003, the defendants filed a "Motion to Dismiss or Transfer." (Docket No. 5.)

---

1. The agreement originally included a loan for an additional $750,000 to be secured by a deed of trust in a fourth restaurant located in Leesburg, Virginia. (*See* Compl. Ex. A at 41; Def.'s Mem. in Supp. of Mot. to Dismiss or Transfer at 2 n. 1.) Bay View Bank apparently released the borrowers from the promissory note reflecting this loan on October 17, 2002 and the parties executed a Satisfaction of Deed of Trust regarding the property. (*See* Def.'s Mem. in Supp. of Mot. to Dismiss or Transfer at 2 n. 1, 7.)

They assert that 28 U.S.C. § 1391(a) affords no basis for venue in the District of Maryland, and they argue in the alternative that a change of venue to the Northern District of West Virginia is appropriate under 28 U.S.C. § 1404(a).

## ANALYSIS

Though neither party has raised it, a preliminary issue regarding the defendants' motion is the effect on this litigation of the bankruptcy petitions filed by four of the five LLC defendants. Under § 362 of the Bankruptcy Code, a bankruptcy petition "operates as a stay" of, among other things, "the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the [bankruptcy proceeding]." 11 U.S.C. § 362(a)(1). MTGLQ filed its complaint before the four defendants filed their bankruptcy petitions. Hence, this case involves an "action or proceeding against the debtor that was … commenced before" the debtor filed for bankruptcy, and the litigation is subject to § 362's automatic stay.

██ The stay, however, does not apply to the motion at issue here. As the Fourth Circuit has observed, "[t]he purpose of the automatic stay, in addition to protecting the relative position of creditors, is to shield the debtor from financial pressure during the pendency of the bankruptcy proceeding." *Winters v. George Mason Bank*, 94 F.3d 130, 133 (4th Cir. 1996); *see also Dean v. Trans World Airlines, Inc.*, 72 F.3d 754, 755–56 (9th Cir. 1995); *In re Siciliano*, 13 F.3d 748, 750–51

(3d Cir.1994); *GATX Aircraft Corp. v. M/V Courtney Leigh*, 768 F.2d 711, 716 (5th Cir.1985); *Holtkamp v. Littlefield*, 669 F.2d 505, 508 (7th Cir.1982). Neither of those purposes would be served by delay in this case; granting the motion would merely change the forum, not shift the priority of creditors or disrupt the defendants' statutory "breathing spell." Indeed, it would be rather perverse if the bankruptcy stay—which, according to the Senate Judiciary Committee, is meant to "relieve[ ] [the debtor] of the financial pressures that drove him into bankruptcy," S.Rep. No. 95–989, at 55, *reprinted in* 1978 U.S.C.C.A.N. 5787, 5841, *quoted in Williford v. Armstrong World Indus., Inc.*, 715 F.2d 124, 127 (4th Cir.1983)—required the court to keep the action in place with respect to the bankrupt defendants, while dismissing or transferring it for the non-bankrupts.[2] It would also be odd to apply "one of the fundamental debtor protections provided by the bankruptcy laws," S.Rep. No. 95–989, at 54, to prevent the debtor defendants from litigating a motion they themselves have filed and briefed. *Cf. Mitchell v. Fukuoka Daiei Hawks Baseball Club*, 206 B.R. 204, 212 (C.D.Cal.1997) ("The Section 362 stay does not apply where, as here, the debtor is the plaintiff in a lawsuit."). I will therefore join other courts that have considered the issue in concluding that dismissing or transferring the case on jurisdictional grounds does not constitute a prohibited "continuation" of the action under § 362. *See In the Matter of Federal Press Co.*, 117 B.R. 942, 950 (N.D.Ind.1989) (ordering a transfer of venue notwithstanding the bankruptcy stay); *Teel v. Am. Steel Foundries*, 529 F.Supp. 337, 346 (E.D.Mo.1981) (dismissing action

**2.** The stay does not apply to co-defendants that have not filed bankruptcy petitions. *See Williford*, 715 F.2d at 126 (ordering litigation to proceed against the remaining solvent defendants despite bankruptcy filings by four

co-defendants). Thus, section 362 does not afford a basis for delaying adjudication of the motion with respect to the remaining defendants, Mr. Guire and Leesburg Restaurant, LLC.

notwithstanding the stay where co-defendants had moved successfully for dismissal on grounds that clearly applied to the bankrupt defendant as well); *Royal Dynasty, Inc. v. Chin,* 37 Mass.App.Ct. 171, 638 N.E.2d 921, 922 (1994) (dismissing appeal for lack of jurisdiction notwithstanding bankruptcy stay).[3]

■ Turning now to the merits of the motion, I agree with the defendants that the District of Maryland is not a proper venue for this suit. Since federal jurisdiction is based on diversity and none of the parties are residents of Maryland, the only possible basis for venue is 28 U.S.C. § 1391(a)(2),[4] which provides that venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated." The events giving rise to MTGLQ's claim were (1) the negotiation, formation, and execution of the secured promissory notes, and (2) the defendants' default on their obligations under the notes. There is no evidence that any of these events occurred in Maryland. While the promissory notes do not indicate where they were negotiated and executed, Mr. Guire appears to have executed the deeds of trust before a notary in West Virginia on May 25, 2000 (Compl. Ex. F at 23, G at 23, H at 23), and Bay View executed at least one of the deeds of trust before a notary in Connecticut (Compl. Ex. F at 24). At any rate, MTGLQ does not contest the defendants' statement that the negotiation and execution of the loan documents occurred outside the forum. (*See* Pl.'s Mem. in Opp. to Def.'s Mot. To Dismiss for Improper Venue or To Transfer Venue at 3; Def.'s Mem. in Supp. of Mot. to Dismiss or Transfer at 3.) As for the default, it could only have occurred in West Virginia, where all the defendants reside, or in New York or Connecticut, where payments to MTGLQ and Bay View, respectively, were to be sent. Finally, contrary to MTGLQ's suggestion, the "property that is the subject of the action" is the loan itself, not the property securing it, and the promissory notes embodying the loan are not to be found in Maryland. Thus, neither the events nor the property at issue in this action provide a basis for venue under § 1391(a)(2).

The only connection between MTGLQ's claim and this district is the presence in Maryland of one of the three restaurants securing the notes. MTGLQ argues that acquiring this property, securing the loan with it, filing the agreement in Maryland,

---

**3.** In addition, at least one court has ruled specifically on a motion to dismiss for lack of venue during the period of the § 362 stay. *See Citibank, N.A. v. J. Lynn Helms,* Civ. A. No. 84–0159, 1987 WL 13141, at *1 (D.D.C. June 12, 1987). Because this decision is unpublished, I cite it only for its reasoning, not as precedent.

**4.** In its entirety, section 1391(a) provides:

A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same state, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

Because MTGLQ's claim is a "civil action wherein jurisdiction is founded only on diversity of citizenship," this provision states the applicable venue rule. Section 1391(a)(1) cannot support venue in Maryland because none of the defendants are Maryland residents. Section 1391(a)(3) is also inapplicable because the action clearly could be brought in the Northern District of West Virginia based on § 1391(a)(1). Thus, section 1391(a)(2) is the only viable option.

"poorly running and managing the business," and failing to generate adequate income from the business to cover the loan payments were all "events" that establish a basis for venue. (Pl.'s Mem. in Opp. to Def.'s Mot. To Dismiss for Improper Venue or To Transfer Venue at 3.) While these occurrences are part of this litigation's factual background, they did not "give rise" to MTGLQ's claim in the sense required by the statute, because MTGLQ may establish all the critical elements of the action—namely, that the defendants formed an agreement and that they breached it—without ever making reference to events in Maryland. *See Bates v. C & S Adjusters, Inc.*, 980 F.2d 865, 868 (2d Cir.1992) ("The statutory standard for venue focuses not on whether a defendant has made a deliberate contact—a factor in the analysis of personal jurisdiction—but on the location where events occurred.") Events that relate only tangentially to the claim cannot constitute a "substantial part of the events or omissions giving rise to the claim"; indeed, strictly speaking, they do not "give rise to" the claim at all. *Cf. Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1371 (11th Cir.2003) (noting disagreement among courts but concluding that "[o]nly the events that directly give rise to a claim are relevant").

Neither of the cases cited by MTGLQ, *Ciena Corp. v. Jarrard*, 203 F.3d 312 (4th Cir.2000), and *Reilly v. Chambers*, 215 F.Supp.2d 759 (S.D.W.Va.2002), shows otherwise, because each involved much more substantial contacts with the forum than are present here. The claim in *Ciena* related to an alleged breach of an employment agreement that one of the parties, the employee, had sent to the forum state, Maryland, to be signed by the other, the employer. 203 F.3d at 317. The employer was headquartered in Maryland, and the employee had taken frequent business trips there, allegedly gaining confidential information during her visits. *Id.*

at 318. Because "[m]any of the events and facts central to this case concerned [the employee's] training, her access to and knowledge of trade secrets, and her job responsibilities, all of which are anchored in Maryland," and the alleged injuries the employee had caused would be sustained in Maryland, the Fourth Circuit concluded that venue was proper in Maryland under § 1391(a)(2). *Id.* By contrast, in this case, neither party resides in Maryland, the agreement was not negotiated or executed here, and none of the central events or facts at issue occurred in the forum.

In *Reilly*, the claims related to a contract to acquire ownership of a corporation that held real estate in the contested forum, West Virginia, as its "sole significant asset." 215 F.Supp.2d at 760. One of the parties signed the agreement in West Virginia; the physical transfer of stock certificates was to take place there; and the alleged breach occurred when one of the parties contacted its agent in the state and instructed him not to proceed. *Id.* Echoing the language of *Ciena*, Chief Judge Haden of the Southern District of West Virginia concluded that venue was proper in his court because "many of the events and facts central to this case are anchored in West Virginia." *Id.* at 764. Again, the facts underlying MTGLQ's claim are very different. Neither the signing, nor the performance, nor the breach of the promissory notes occurred in Maryland. While Chief Judge Haden noted that "the very property that is at the center of the parties' dispute is located in this State," *id.*, the West Virginia real estate was, in effect, the only asset of interest in the litigation, whereas in MTGLQ's suit the bulk of the property underlying the promissory notes (two of the three restaurants) is located outside Maryland. Furthermore, because the plaintiffs in *Reilly* had stated a claim of promissory estoppel, a contested issue

was likely to be whether entering a contract to sell timber from the West Virginia property could constitute detrimental reliance and bind the defendants to their promise to sell the stock even if the stock deal were not a formal contract. *See id.* at 760. In MTGLQ's case, no such question about the management or disposition of the Maryland property bears directly on the plaintiff's claim.

A recent District of Maryland case, *Choice Hotels International, Inc. v. Madison Three, Inc.,* 23 F.Supp.2d 617 (D.Md. 1998), further illustrates what § 1391(a)(2) requires and why MTGLQ's claim falls short. In *Choice,* the court concluded that venue was proper in Maryland because "[t]he agreements under which suit [was] brought were formed in Maryland and [the plaintiff] secured its right to institute suit by performing its contractual duties in this state." 23 F.Supp.2d at 622. In addition, the plaintiff had its principal place of business in Maryland, the agreement provided for payments that were to be sent to Maryland, and the contract was governed by Maryland law. *Id.* at 619. None of those factors are present here.

A more appropriate venue for MTGLQ's claim is the Northern District of West Virginia.[5] Not only is venue proper there under § 1391(a)(1) because all the defendants reside in West Virginia, but also the bulk of the property securing the promissory notes is located there, the defendants were expected to perform their obligations under the notes by sending payments from their place of residence in the state, and the alleged breach of those obligations occurred there when the defendants failed to make the required payments. Although § 1391 no longer requires the court to identify the single best venue for a plaintiff's claim, *see generally Uffner v. La Reunion Francaise, S.A.,* 244 F.3d 38, 42 (1st Cir.2001) (discussing 1990 amendments to

§ 1391 and concluding that under the current statute "venue may be proper in any number of districts"), in this case the claim's connections to West Virginia so far predominate over those in Maryland as to make it impossible to conclude that a "substantial part of the events or omissions giving rise to the claim" occurred in this district. Thus, while the statute would permit me to dismiss the action, I elect instead to transfer the case to the Northern District of West Virginia because the action could have been brought there originally and a transfer would be in the interest of justice. *See* 28 U.S.C. § 1406(a).

Because I have concluded that venue is improper in Maryland under § 1391 and transferred the case under § 1406(a), the court will not reach the defendants' argument that a discretionary change of venue is appropriate under 28 U.S.C. § 1404(a).

A separate Order follows.

## ORDER

For the reasons stated in the accompanying Memorandum, it is hereby Ordered that:

1. the defendants' motion to dismiss or transfer venue (Docket No. 5) shall be **GRANTED**;

2. this case shall be **TRANSFERRED** to the Northern District of West Virginia;

3. copies of this Order and the accompanying Memorandum shall be **SENT** to counsel of record; and

4. the clerk of the court shall **CLOSE** this case.

---

**5.** The court expresses no opinion as to whether other districts might also be proper venues.